THE STATE OF OHIO, APPELLEE, *v.* EVANS, APPELLANT.
THE STATE OF OHIO, APPELLEE, *v.* MARTIN, APPELLANT.

[Cite as State v. Evans (1972), 32 Ohio St. 2d 185.]

(Nos. 72-33 and 72-163—Decided December 15, 1972.)

*Mr. George C. Smith*, prosecuting attorney, and *Mr. C. William Brownfield, Jr.*, for appellee in case No. 72-33.
*Mr. Roy F. Martin*, for appellant in case No. 72-33.

*Mr. Stephan M. Gabalac,* prosecuting attorney, *Mr. Charles E. Grisi* and *Mr. Stanley P. Aronson,* for appellee in case No. 72-163.

*Mr. Albert S. Rakas,* for appellant in case No. 72-163.

*Per Curiam.* The first question is whether the police photographs, admitted as evidence in both trials, constituted prejudicial error.

Police identification markings characterized each picture. They were double-shot in nature, having front and profile views of appellants. The latter maintain that these pictures prejudiced the jury, citing *State* v. *Breedlove* (1971), 26 Ohio St. 2d 178. The second paragraph of the syllabus of that case reads:

"On direct examination, evidence of the identification of the defendant from a selection of photographs, using photographs from police files with police identification numerals thereon which provide the finder of facts with the reasonable inference that defendant has had prior criminal involvement, may not be used for the purpose of proving defendant's identity."

The second question is whether *Breedlove* governs the instant cases, which were pending on direct review when that case was announced.

The same question was presented in *State* v. *Lynn* (1966), 5 Ohio St. 2d 106. There, a direct appeal was also pending when the United States Supreme Court altered a state criminal rule of law. This court noted that the issue of whether a new rule should be applied retroactively arises only when a conviction has become final.

This court stated that "the term, 'final conviction,' when used in relation to the doctrine of retrospective application of a judicial ruling means a conviction in which the accused has exhausted all his appellate remedies. . . ." It concluded that "application of a new rule of law to a pending appeal is not retrospective," and thus held that the new rule applied to the cases pending on the announcement date. *State* v. *Lynn, supra* (5 Ohio St. 2d 106), at page 108.

The next question is whether lack of timely objection at trial defeats Martin's appeal based on the photographs. As to Evans, the transcript shows counsel objected to the introduction of the photos.

The first paragraph of the syllabus of *State* v. *Lancaster* (1971), 25 Ohio St. 2d 83, states that:

". . . an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. (Paragraph one of the syllabus of *State* v. *Glaros,* 170 Ohio St. 471, approved and followed.)"

Appellant, on the other hand, cites *State* v. *Cowans* (1967), 10 Ohio St. 2d 96, and *O'Connor* v. *Ohio* (1966), 385 U. S. 92, and maintains that they should control this case. We do not agree. Those cases are similar in that no objection was offered at trial and in each case appellant successfully argued that an objection would have been futile. The United States Supreme Court in *O'Connor* at page 93, held, "that in these circumstances the failure to object in the state courts cannot bar the petitioner from asserting this federal right." A majority of this court is persuaded that since *Cowans* involved a federal right, *Cowans* was compelled by *O'Connor.* In the case at bar, a federal constitutional right is not involved and consequently the *O'Connor* principle is not binding upon this court.

The last question concerns only Martin. Appellant claims that his trial was tainted when a state's witness uttered a hearsay statement during questioning about the fraudulent car rental. The witness testified that a fellow employee, Floyd, knew the person who rented the car.

She was then asked what she did "in order to learn who the person was that had come into your agency and rented the car from you."

She answered: "Well, I called Floyd and asked him if he thought he could find out who it was, because I needed to know to get my car back. And he said, 'Well, I could look in our Year Book.' He knew he was in it."

The record shows that Floyd brought the Year Book into the office for the witness, whose testimony follows:

"Q. Did you look for pictures in the Year Book?

"A. Yes.

"Q. Did you see a picture in the Year Book that appeared to be the same person that had rented the car from you?

"A. Yes.

"Q. Was there a name under the picture?

"A. To the side there was a name, 'Milan Martin.' "

The foregoing shows that the state's witness looked through the Year Book herself to identify appellant. There is no indication that she received assistance from Floyd. Therefore, the hearsay statement was not prejudicial.

In case No. 72-33, the judgment of the Court of Appeals for Franklin County is reversed, and a new trial ordered. In case No. 72-163, the judgment of the Court of Appeals for Summit County is affirmed.

*Judgment reversed in case No. 72-33.*
*Judgment affirmed in case No. 72-163.*

O'NEILL, C. J., CORRIGAN, STERN and BROWN, JJ., concur in case No. 72-33.

SCHNEIDER, HERBERT and LEACH, JJ., dissent in case No. 72-33.

SCHNEIDER, HERBERT, CORRIGAN, STERN, LEACH and BROWN, JJ., concur in case No. 72-163.

O'NEILL, C. J., dissents in case No. 72-163.

LEACH, J., concurring in case No. 72-163 but dissenting in case No. 72-33.

Involving as it did the establishment of a new rule of evidence by which prejudice is judicially presumed from the use of photographs from police files, I would apply such rule only to those trials which took place subsequent to the announcement of the decision of this court to this effect in *State* v. *Breedlove*, 26 Ohio St. 2d 178, on June 23, 1971.

This same principle of prospective application based on the time of trial has been applied by the United States Supreme Court in *Johnson* v. *New Jersey* (1966), 384 U. S. 719 (with respect to its holdings in *Escobedo* v. *Illinois* [1964], 378 U. S. 478, and *Miranda* v. *Arizona* [1966], 384 U. S. 436, as to the admissibility of confessions); and in *Desist* v. *United States* (1969), 394 U. S. 244 (with respect to its holding in *Katz* v. *United States* [1967], 389 U. S. 347, as to the admissibility of evidence obtained by electronic eavesdropping).

In addition to the reasons given by the majority for its affirmance of the judgment of conviction in case No. 72-163, with which I am in agreement, I would apply this same principle of prospective application therein.

Moreover, in case No. 72-163, I think it clear that any claimed violation of the principles enunciated in *Breedlove* was "harmless error beyond a reasonable doubt." *Chapman* v. *California* (1967), 386 U. S. 18; *Harrington* v. *California* (1969), 395 U. S. 250. The defendant herein took the stand and admitted six prior convictions and, in essence, argued that he had freely admitted his guilt in all of the other cases but that in the case then being tried he was not guilty and was denying guilt. This testimony, a typical defense strategy, could only be employed by defendant taking the stand, which he chose to do. In addition, while admitting that he had confessed, he claimed that his confession was not true and that he had made the confession only as a part of a deal with his probation officer upon the basis that he would be returned for probation violation without additional charges being filed. Obviously this defense required affirmative testimony as to a prior conviction.

When all such evidence is considered, it becomes abundantly clear that the use of the "mug shots" in case No. 72-163 could not be considered to have been truly prejudicial in this case, in any event.

SCHNEIDER and HERBERT, JJ., concur in the foregoing opinion.