The STATE of Ohio, Appellee,

v.

MOORE, Appellant.

[Cite as *State v. Moore*, 161 Ohio App.3d 778, 2005-Ohio-3311.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 02 CA 216.

Decided June 24, 2005.

Paul J. Gains, Mahoning County Prosecuting Attorney, for appellee.

Gary L. Van Brocklin, for appellant.

---

WAITE, Judge.

{¶ 1} Appellant, Brandon Moore, challenges a number of aspects of his 141–year prison sentence for 12 counts of aggravated robbery, rape, complicity to rape, kidnapping, conspiracy to commit aggravated robbery, and aggravated menacing, along with 11 firearm specifications. Appellant contends that some of the firearm specifications should have been merged, that consecutive sentences were improperly imposed, that his substitute counsel at sentencing was ineffective, and that three counts of complicity to rape should have been merged. As will be more fully explored below, we find merit in two of appellant's assignments of error on appeal. The record reflects that some of the firearm specifications covered the same acts and transactions and therefore should have been merged. Appellant is also correct that there were errors in the manner in which consecutive sentences were imposed. Finally, there is plain error in the wording of the conspiracy charge in the indictment. None of appellant's other arguments are persuasive. The judgment of the Mahoning County Court of Common Pleas is affirmed in part, reversed in part, and vacated in part, and the cause is remanded for resentencing.

## FACTS AND PROCEDURAL POSTURE

{¶ 2} On August 21, 2001, Jason Cosa pulled into his driveway and was confronted by appellant, who pushed a gun into Jason's face and demanded

money. Appellant was 15 years old at the time. The other two passengers in Jason's car were Christine Hammond and Jason's grandfather. After the victims handed over their possessions, appellant fled down the driveway and entered a dark, noisy, older-model automobile that was waiting for him.

{¶ 3} That same evening, appellant approached M.K., a 21–year–old student at Youngstown State University. As she was opening the trunk of her car, appellant put a gun into her stomach and demanded money. Appellant was wearing a mask, but removed the mask during the robbery. He began telling M.K. how beautiful she was and forced her to the passenger side of her car. Appellant entered the driver's seat and began following a dark, older-model vehicle. M.K. had noticed this vehicle stopping nearby prior to the attack.

{¶ 4} As they drove, appellant continued commenting on M.K.'s beauty. He demanded that she turn over any jewelry, and she complied. M.K. asked to be released, but appellant refused. Soon afterward, appellant stopped the car and codefendant Chaz Bunch entered M.K.'s car through the back door. Bunch put a gun to M.K.'s head and demanded money. Throughout the ordeal M.K. pleaded with them not to kill her.

{¶ 5} As they continued to follow the other vehicle, appellant inserted his fingers into M.K.'s vagina several times. At this point, M.K. tried to memorize the license plate of the dark vehicle they were following, which she remembered as CTJ 6423.

{¶ 6} The cars turned down a dead-end street and stopped on a gravel lot. Bunch and appellant ordered M.K. to get out of the car and pointed their guns at her. They grabbed her by the hair and forced their penises into her mouth, taking turns holding her head and orally raping her. This was repeated two or three times. Again M.K. pleaded that they not kill her, and they then took M.K. to the trunk of her car.

{¶ 7} Once at the trunk, codefendant Jamar Callier began going through M.K.'s possessions in the car. Some items taken were a green Nike bag, tennis shoes, clothes, a bag from Old Navy, jewelry, and a purse. As M.K. faced the trunk of her car, appellant and Bunch told her to pull her pants down and turn around. M.K. resisted, and told her attackers she was pregnant, in an attempt to avoid being raped again. Appellant and Bunch pushed her, face forward, against the car and one of them anally raped her. Bunch then put his gun into her back and forced her to the front of the car.

{¶ 8} Bunch threw M.K. to the ground. While she was on the ground, appellant and Bunch took turns vaginally and orally raping her. While one was vaginally raping her, the other would perform an oral rape, and vice versa.

{¶ 9} At some point, codefendant Callier came over and forced them to stop. Bunch stated that he wanted to kill her, but Callier would not let him. Appellant put his gun in M.K.'s mouth and told her, "Since you were so good, I won't kill you." Callier helped M.K. back into her car. They threatened to kill her and her family if she told anyone what had happened.

{¶ 10} M.K. drove to the home of her boyfriend's uncle and began screaming out the license plate number of the car she had seen. It later was discovered that she had inverted two numbers; the license plate was actually CTJ6243. M.K. was immediately taken to the hospital, and the Youngstown Police Department was contacted. Officer Colleen Lynch was at the hospital on an unrelated call and followed M.K. into the emergency room. She observed bruises, scrapes, and swelling. A sexual-assault nurse completed a rape examination of M.K.'s mouth, vagina, and rectum and recorded several injuries including bruises, bite marks, scratches, and abrasions and injuries to her vagina and anus.

{¶ 11} After leaving the scene of the crime, the assailants went to a Dairy Mart on Mahoning Avenue. Officer Anthony Vitullo had heard a broadcast of the license plate of the suspects' vehicle (with two numbers transposed) and noticed a similar vehicle in the Dairy Mart parking lot. Officer Vitullo observed and followed the vehicle, which soon ran a stop sign and pulled into a driveway on Edwards Street in Youngstown. Codefendant Bunch, who was driving, stopped the car and ran. Officer Vitullo radioed for backup assistance and arrested the other occupants of the car. Items found in the car included M.K.'s bag from Old Navy, a stuffed animal, a leather purse, tennis shoes, female clothing, a vehicle-registration card, and a credit-union card belonging to victim Jason Cosa, a .38–caliber handgun, a black face mask, blue and black caps, bullets, and shotgun shells. Police also found a piece of paper in the pocket of appellant's pants that stated "Property of [M.K.]."

{¶ 12} After the police took appellant into custody, juvenile proceedings were initiated against him in the Mahoning County Court of Common Pleas, Juvenile Division. The case was transferred to the general division, and a 12–count complaint, with 11 firearm specifications, was filed against appellant on May 16, 2002. The counts included three counts of aggravated robbery in violation of R.C. 2911.01(A)(1), three counts of rape in violation of R.C. 2907.02(A)(2), three counts of complicity to rape in violation of R.C. 2923.03(A)(2) and 2907.02(A)(2), one count of kidnapping in violation of R.C. 2905.01(A)(4), one count of conspiracy to commit aggravated robbery in violation of R.C. 2923.01(A)(1) and 2911.01(A)(1), and one count of aggravated menacing in violation of R.C. 2903.21(A). Counts one through 11 were first-degree felonies, count 12 was a first-degree misdemeanor.

{¶ 13} On September 11, 2002, the trial court joined appellant's case with that of the other three codefendants. Trial began on September 23, 2002. The jury found appellant guilty on all 12 counts on October 2, 2002. Sentencing was scheduled for October 23, 2002.

{¶ 14} On October 17, 2002, appellant's counsel filed a motion to continue the sentencing hearing due to personal matters. The court overruled the motion on October 21, 2002. Appellant was represented at the sentencing hearing by another attorney.

{¶ 15} On October 29, 2002, the trial court filed its judgment. The court sentenced appellant to the maximum prison term for each count, to be served consecutively (except for the misdemeanor menacing charge, which was to be served concurrently with the other sentences). The court also sentenced appellant to 11 firearm-specification penalties, also to be served consecutively. The aggregate sentence amounted to 141 years in prison.

{¶ 16} Appellant filed this timely appeal on November 20, 2002.

{¶ 17} Appellant presents four assignments of error and one supplemental assignment of error in this appeal. They will be presented slightly out of order to aid our analysis. There is also a preliminary matter concerning the conspiracy-to-commit-aggravated-robbery charge that we must address prior to reviewing appellant's assignments of error.

## SUFFICIENCY OF THE INDICTMENT FOR THE CHARGE OF CONSPIRACY

{¶ 18} On review of appellant's assignments of error, along with our review of the appeals submitted by appellant's codefendants, it was brought to our attention that the portion of the indictment dealing with the appellant's conspiracy charge appeared to be defective in light of the holding in *State v. Childs* (2000), 88 Ohio St.3d 194, 724 N.E.2d 781. In *Childs*, the Ohio Supreme Court was asked to determine "whether an indictment for conspiracy pursuant to R.C. 2923.01, which fails to allege at least one specific, substantial, overt act in furtherance of the conspiracy, is fatally defective for such failure." Id. at 197, 724 N.E.2d 781.

{¶ 19} R.C. 2923.01 states:

{¶ 20} "(B) No person shall be convicted of conspiracy unless a *substantial overt act in furtherance of the conspiracy is alleged* and proved to have been done by the accused or a person with whom the accused conspired, subsequent to the accused's entrance into the conspiracy. For purposes of this section, an overt act is substantial when it is of a character that manifests a purpose on the part of

the actor that the object of the conspiracy should be completed." (Emphasis added.)

{¶ 21} *Childs* acknowledged that an indictment is usually sufficient when it tracks the language of the criminal statute that gives rise to the charge. Id. at 199, 724 N.E.2d 781. This is not the case, however, when charging a defendant with conspiracy. In a conspiracy charge, as defined by R.C. 2923.01(B), the criminal statute itself requires that a "substantial overt act in furtherance of the conspiracy *is alleged* and proved." (Emphasis added.) According to *Childs*, a specific substantial overt act must be set forth in the indictment itself for the conspiracy charge to be valid. Id. In *Childs* the Supreme Court held as follows:

{¶ 22} "[W]hile the state may satisfy its burden by reciting the exact words of a criminal statute in an indictment for some offenses, an indictment for conspiracy to commit aggravated trafficking pursuant to R.C. 2923.01 must allege some specific, substantial, overt act performed in furtherance of the conspiracy. The state's failure to allege a specific, substantial, overt act committed in furtherance of the conspiracy in count fourteen of the indictment against Childs renders the indictment invalid." Id.

{¶ 23} In the instant case, the conspiracy charge in the indictment merely tracks the language of the conspiracy statute rather than setting forth specific facts that describe substantial, overt acts in furtherance of the conspiracy, as required by R.C. 2923.01(B) and *Childs*. Therefore, the indictment is insufficient to charge appellant with conspiracy to commit aggravated robbery. We have been forced to reach this same conclusion in the appeals of codefendants Bunch and Bundy. Thus, we must vacate appellant's conviction and sentence for conspiracy to commit aggravated robbery and dismiss count 11 of the indictment. We also vacate and dismiss the concomitant firearm specification.

{¶ 24} The Rules of Criminal Procedure contemplate the retrial of a defendant when a court grants a motion to dismiss an indictment based on defects therein. See, e.g., *State v. Broughton* (1991), 62 Ohio St.3d 253, 266, 581 N.E.2d 541; *State v. Duncan*, 154 Ohio App.3d 254, 2003-Ohio-4695, 796 N.E.2d 1006; *State v. Childs* (Sept. 11, 1998), 2nd Dist. No. 16325, 1998 WL 598102. For example, Crim.R. 12(J) states:

{¶ 25} "If the court grants a motion to dismiss based on a defect in the institution of the prosecution or in the indictment, information, or complaint, it may also order that the defendant be held in custody or that the defendant's bail be continued for a specified time not exceeding fourteen days, pending the filing of a new indictment, information, or complaint."

{¶ 26} If the state so chooses, it may refile the conspiracy charge against appellant, provided that the new indictment is consistent with the requirements explained in *Childs* and in this opinion.

## ASSIGNMENT OF ERROR NO. 1

{¶ 27} "The court erred when it refused to merge firearm specification [sic] which arose out of a single transaction."

{¶ 28} At the sentencing hearing, appellant's counsel requested that the court merge all 11 firearm specifications into two, based on counsel's understanding of the requirements of the sentencing statutes. The court at one point determined that nine of the firearm specifications were committed with separate animus and would be imposed individually. The court subsequently sentenced appellant to all 11 firearm specifications, to be served consecutively, again finding that the specifications were committed with separate animus and were not eligible to be merged.

{¶ 29} Again, appellant was charged with 11 firearm specifications pursuant to R.C. 2941.145(A), which requires an indictment to state that "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."

{¶ 30} R.C. 2929.14(D)(1)(a)(ii) imposes a mandatory three-year prison term when a defendant is convicted of the firearm specification in R.C. 2941.145.

{¶ 31} R.C. 2929.14(E)(1)(a) requires that convictions for firearm specifications be served consecutively to any other convictions imposed on the defendant:

{¶ 32} "Subject to division (E)(1)(b) of this section, if a mandatory prison term is imposed upon an offender pursuant to division (D)(1)(a) of this section for having a firearm on or about the offender's person or under the offender's control while committing a felony, if a mandatory prison term is imposed upon an offender pursuant to division (D)(1)(c) of this section for committing a felony specified in that division by discharging a firearm from a motor vehicle, or if both types of mandatory prison terms are imposed, the offender shall serve any mandatory prison term imposed under either division consecutively to any other mandatory prison term imposed under either division or under division (D)(1)(d) of this section, consecutively to and prior to any prison term imposed for the underlying felony pursuant to division (A), (D)(2), or (D)(3) of this section or any other section of the Revised Code, and consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender."

{¶ 33} Appellant correctly argues that pursuant to R.C. 2929.14(D)(1)(b), a court is not permitted to impose more than one sentence for multiple firearm specifications if the specifications refer to the same criminal act or transaction:

{¶ 34} "If a court imposes a prison term on an offender under division (D)(1)(a) of this section, the prison term shall not be reduced pursuant to section 2929.20, section 2967.193, or any other provision of Chapter 2967. or Chapter 5120. of the Revised Code. *A court shall not impose more than one prison term on an offender* under division (D)(1)(a) of this section *for felonies committed as part of the same act or transaction.*" (Emphasis added.)

{¶ 35} Appellant contends that it is irrelevant whether the firearm specifications refer to acts that were committed with separate animus and that the trial court failed to consider which counts were part of the same criminal act or transaction.

{¶ 36} The issue that appellant raises is a mixed issue of law and fact. Appellant argues that the trial court used the wrong legal standard, but also argues that the court erred in finding that there was enough evidence to support the imposition of 11 consecutive firearm-specification penalties. When the record presents a mixed issue of law and fact, a reviewing court should uphold the trial court's findings of fact unless those findings are clearly erroneous. *State v. Gillard* (1997), 78 Ohio St.3d 548, 552, 679 N.E.2d 276. Any purely legal issues, and the trial court's application of the law to the facts, are subject to de novo review. Id.

{¶ 37} "Transaction," as used in the firearm specification statutes, has been defined as "a series of continuous acts bound together by time, space and purpose, and directed toward a single objective." *State v. Wills* (1994), 69 Ohio St.3d 690, 691, 635 N.E.2d 370 (reviewing former R.C. 2929.71(B), containing substantially similar language to R.C. 2929.14(D)(1)(b)). Other courts have stated that a "transaction" is a "single criminal adventure." *State v. Stilson* (Dec. 13, 1996), 4th Dist. No. 95CA28, 1996 WL 735246. The First District Court of Appeals has adopted the following definition: " 'a series of criminal offenses which develop from a single criminal adventure, bearing a logical relationship to one another, and bound together by time, space, and purpose directed toward a single objective.' " *State v. Godfrey* (Aug. 14, 1998), 1st Dist. Nos. C–970531 and C–970577, 1998 WL 472021, quoting *State v. Crawford* (Feb. 6, 1986), 10th Dist. No. 85AP–324, 1986 WL 1715.

{¶ 38} "Animus," in contrast, has been described as "purpose, intent, or motive." *Newark v. Vazirani* (1990), 48 Ohio St.3d 81, 84, 549 N.E.2d 520. It has also been defined as "immediate motive." *State v. Logan* (1979), 60 Ohio St.2d 126, 131, 14 O.O.3d 373, 397 N.E.2d 1345.

{¶ 39} Whether crimes were committed with separate animus most often arises when a court is considering an allied offense of similar import as set forth in R.C. 2941.25:

{¶ 40} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶ 41} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a *separate animus* as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them." (Emphasis added.)

{¶ 42} Most appellate courts have held that the test for merging firearm specifications found in R.C. 2929.14(D)(1)(b) is distinct from the "separate animus" test for determining allied offenses of similar import as found in R.C. 2941.25(B). For example, the Eleventh District Court of Appeals held that the Ohio Supreme Court, in *Wills,* 69 Ohio St.3d 690, 635 N.E.2d 370, impliedly rejected the "separate animus" test in reference to merging firearm specifications. *State v. Salinas* (1997), 124 Ohio App.3d 379, 388, 706 N.E.2d 381. The Second and Fourth District Courts of Appeals have held that the test for merging firearm specifications is a broader concept than the "separate animus" test found in R.C. 2941.25(B). *State v. Walker* (June 30, 2000), 2nd Dist. No. 17678, 2000 WL 873222; *State v. White* (1991), 71 Ohio App.3d 550, 554, 594 N.E.2d 1087. The Ninth and Tenth District Courts of Appeals have also concluded that the "separate animus" test does not apply when determining whether firearm specifications should merge. *State v. Brown* (Aug. 19, 1998), 9th Dist. No. 18591, 1998 WL 487039; *State v. Jones* (Mar. 18, 1999), 10th Dist. No. 98AP–639, 1999 WL 155703.

{¶ 43} The only appellate court that has consistently used the "separate animus" test with respect to firearm specifications is the Twelfth District. See *State v. Kehoe* (1999), 133 Ohio App.3d 591, 617, 729 N.E.2d 431; *State v. Throckmorton* (May 15, 2000), 12th Dist. No. CA99–08–081, 2000 WL 628210.

{¶ 44} This court has not explicitly ruled on this issue. Furthermore, we have not found a case in which we applied the separate-animus test when reviewing the merger of firearm specifications.

{¶ 45} In one fairly recent case, we held that firearm specifications for aggravated murder and aggravated robbery should have merged because the defendant had one overall common objective, which was to commit suicide by inducing the police to shoot him. *State v. Burch* (Mar. 15, 2000), 7th Dist. No.

97–JE–57, 2000 WL 288607. On the other hand, in *State v. Mahone* (Aug. 8, 1996), 7th Dist. No. 92 CA 27, 1996 WL 451373, we held that an aggravated murder and an aggravated robbery had no common objective, and affirmed the imposition of two separate firearm specifications. In both cases, though, our focus was on the defendant's overall criminal objectives, not on the specific animus for each crime.

{¶ 46} The caselaw on this subject indicates that it would be much too simple to merely impose separate penalties for firearm specifications because the defendant had separate animus for each corresponding criminal act. Whether or not a defendant had a common purpose or objective in committing multiple crimes is broader than the concept of animus and is also highly dependent on the factual circumstances of each case. Therefore, appellant is correct that the trial court relied on the wrong legal standard when imposing separate penalties for every gun specification.

{¶ 47} Even if the trial court used the wrong legal standard, appellee argues, the aggravated robbery of two separate victims constitutes two separate criminal transactions and warrants separate penalties for the corresponding firearm specifications, citing *Wills*, supra, 69 Ohio St.3d at 691, 635 N.E.2d 370. Appellee contends that appellant held a gun to Jason Cosa's face, with the objective of robbing Jason, and then turned his attention to Christine Hammond, with the objective of robbing her. Appellee argues that appellant could have turned and fled after robbing Jason, but did not, and that this failure to flee indicates a distinct purpose to commit a second and distinct robbery.

{¶ 48} Appellee's argument is not persuasive, because it is nothing more than an application of the separate-animus test discussed earlier. While it is certainly possible that the presence of two victims could mean two different criminal objectives, the factual context of the crime must support such a conclusion. In the instant case, Jason's testimony indicated that a gunman ran up the driveway, pointed a gun at him, and demanded money from everyone in Jason's car. Christine testified that she was sitting in the back of Jason's car and saw the gunman get out of a dark car, run up Jason's driveway, and demand money from her, from Jason, and from Jason's grandfather (who was also in the car). The entire incident took place in approximately 90 seconds. There is no indication of any purpose other than a robbery of the passengers in Jason's car. Therefore, the trial court should have imposed only one three-year prison term for the charges stemming from the robbery of Jason and Christine. Appellant may be sentenced to only one prison term for the combined firearm specifications contained in counts two and three of the indictment.

{¶ 49} Appellee also contends that each of the crimes against M.K. had a separate purpose and objective, warranting separate firearm-specification penalties for each crime. Appellee argues that the objective of kidnapping is to restrict a person's freedom, that the objective of rape is to force sexual contact on another person, and that the objective of complicity to rape is to aid and abet another to commit rape. Furthermore, appellee contends that each count of rape and complicity to rape had a separate objective. Appellee submits that the objective of oral rape is different from anal rape and digital vaginal rape. Appellee asserts that appellant raped M.K. at least three times and that each time appellant had a specific objective to commit that particular rape. Appellee also contends that each time he assisted codefendant Bunch in raping M.K., appellant had a separate objective to specifically assist Bunch in committing that specific act of rape.

{¶ 50} Using appellee's reasoning, an "act or transaction" justifying multiple firearm specifications is no different than proving that separate crimes have been committed. Appellee's argument shows only that nine punishable crimes were committed against M.K. The evidence, though, demonstrates only three overall objectives in appellant's rampage against M.K.

{¶ 51} Appellant first approached M.K. to rob her. At some point during the robbery, appellant began staring at M.K. and complimenting her. Appellant then told her to get into her car, and they started following the car being driven by the other assailants. At this point, the objective appears to have changed from robbery to kidnapping.

{¶ 52} While appellant was driving M.K.'s car, he carried on a conversation with her and told her that she was beautiful. Appellant carried on this type of conversation for some time. At some point in the car, appellant began raping M.K. by inserting his fingers into her vagina. From this point on, appellant's objective centers on the multiple rape crimes committed against M.K.

{¶ 53} These facts give rise to only three criminal transactions for purposes of firearm specifications: the robbery, the kidnapping, and the rape crimes. Furthermore, although appellant was also convicted of three counts of complicity to rape, the complicity occurred during the same time period and as part of the same transaction as the rape crimes for which appellant was convicted. In fact, it was appellant's acts of rape that aided and abetted, in part, codefendant Bunch in his commission of separate rape crimes against M.K. The record indicates that appellant's acts of rape and acts of complicity to rape were part of the same criminal transaction and so do not give rise to additional prison terms for the firearm specifications attached to the three complicity charges.

{¶ 54} Based on the evidence in the record, the trial court should have imposed only three prison terms for the gun specifications attached to the crimes relating

to M.K., which consist of one count of aggravated robbery, three counts of rape, three counts of complicity to rape, and one count of kidnapping.

{¶ 55} Based on the aforementioned reasoning, we sustain appellant's first assignment of error in part. Upon remand for resentencing, the trial court is limited to imposing, at most, one prison term for the combined firearm specifications contained in counts two and three of the indictment (relating to the aggravated robbery of Christine Hammond and Jason Cosa), and three separate prison terms for the combined firearm specifications in counts one, four, five, six, seven, eight, nine, and ten (relating to the aggravated robbery, rape, conspiracy to rape, and kidnapping of M.K.). We have already determined that count 11 must be dismissed, and it does not play a role in our analysis of this assignment of error.

## ASSIGNMENT OF ERROR NO. 2

{¶ 56} "The court erred when it sentenced appellant to consecutive sentences without making the necessary finding pursuant to O.R.C. 2929.14(E)(4)(a)(b)(c)."

{¶ 57} Appellant argues that consecutive sentences may only be imposed if the trial court follows the requirements of R.C. 2929.14(E)(4), which states (in the version of the statute in effect at the time appellant's crimes were committed):

{¶ 58} "(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

{¶ 59} "(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

{¶ 60} "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.

{¶ 61} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." Am.Sub.S.B. No. 222, eff. 3–22–01.

{¶ 62} Appellant asserts that the trial court must make all of the findings required by R.C. 2929.14(E)(4) and that failure to make those findings requires

that the sentence be vacated and the case remanded for a new sentencing hearing. Appellant contends that the trial court failed to make any of the three required findings.

{¶ 63} Appellant correctly states the law regarding consecutive sentences. According to the recent case of *State v. Comer*, 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473, a trial court must make the required findings on the record at the sentencing hearing in order to properly impose consecutive sentences pursuant to R.C. 2929.14(E)(4). Id. at paragraph one of the syllabus. The trial court must also give reasons to support those findings, as required by R.C. 2929.19(B)(2)(c). As stated in *Comer*:

{¶ 64} "While consecutive sentences are permissible under the law, a trial court must clearly align each rationale with the specific finding to support its decision to impose consecutive sentences. These findings and reasons must be articulated by the trial court so an appellate court can conduct a meaningful review of the sentencing decision." Id. at ¶ 21.

{¶ 65} R.C. 2929.14(E)(4) requires the trial court to make the following four findings and to give reasons supporting each finding in order to properly impose consecutive prison sentences. The court must find that:

{¶ 66} (1) Consecutive terms are necessary to:

{¶ 67} (a) protect the public from future crime; or

{¶ 68} (b) punish the offender.

{¶ 69} (2) Consecutive sentences are not disproportionate to the seriousness of the offender's conduct.

{¶ 70} (3) Consecutive sentences are not disproportionate to the danger the offender poses to the public.

{¶ 71} (4) The court must make at least one of the following findings as well:

{¶ 72} (a) the offender committed the multiple offenses while the offender was awaiting trial or sentencing; or

{¶ 73} (b) the offender committed the multiple offense while under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code; or

{¶ 74} (c) the offender committed the multiple offense while under postrelease control for a prior offense; or

{¶ 75} (d) the harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct; or

{¶ 76} (e) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 77} The court must also provide reasons to support every finding.

{¶ 78} The trial court made some, but not all, of the findings required by R.C. 2929.14(E)(4). The trial court clearly stated that consecutive terms "are necessary to punish you and to protect the public," which satisfies the first required finding. The sentencing record, though, does not contain specific reasons that correspond to the stated finding. Although the court did give many reasons to support its overall sentence, the reasons do not align with the findings made by the court. Under *Comer*, this is the standard we are now forced to apply when determining whether consecutive sentences were properly imposed.

{¶ 79} The trial court did not clearly make the second and third required findings outlined in R.C. 2929.14(E)(4), namely, that consecutive sentences are proportionate to the seriousness of the offender's conduct and proportionate to the danger that the offender poses to the public. The trial court did make one of the five possible remaining findings, namely, that the harm cause by the crimes "is so great and unusual, that a single term does not adequately reflect the seriousness of your conduct."

{¶ 80} In some sense, the findings required by R.C. 2929.14(E)(4) overlap with each other and are redundant. See *State v. Kimbrough* (Mar. 2, 2000), 8th Dist. Nos. 75642, 75643, and 75644, 2000 WL 235760. For example, if the court finds that "consecutive sentences are necessary to protect the public from future crime by the offender," then it has also found that consecutive sentences are "necessary to protect the public from future crime or to punish the offender." The statute lists these as two separate findings, when one finding clearly encompasses the other. There is also a high degree of overlap between the finding that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct" and the finding that "no single prison term * * * adequately reflects the seriousness of the offender's conduct." Due to this overlap in the language of the statute, it is theoretically possible for a trial court to make the appropriate findings, even without tracking the precise language of the statute.

{¶ 81} Once again, though, the trial court did not align its findings with the reasons supporting the findings as required by *Comer*. When a trial court does not make its findings in the form provided by R.C. 2929.14(E)(4), it makes it doubly difficult for the court to align the findings with supporting reasons, as required by statute. We have previously held that the trial court is not required to recite the exact language of R.C. 2929.14(E)(4) when imposing consecutive sentences, as if the statutory language was some sort of magic or talismanic formula. *State v. Howard*, 7th Dist. No. 02 BA 9, 2003-Ohio-804, 2003 WL

403364. Now, in light of the recent *Comer* decision, it is becoming increasing difficult to affirm the imposition of consecutive sentences when the trial court does not mimic the language and format of the statute.

{¶ 82} We are aware that the trial court in this case rendered its sentence approximately ten months prior to the release of the *Comer* decision. Nevertheless, *Comer* is retrospective in its application, in keeping with the rule set forth in *Peerless Elec. Co. v. Bowers* (1955), 164 Ohio St. 209, 210, 57 O.O. 411, 129 N.E.2d 467, that "a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former was bad law, but that it never was the law." See, also, *State v. Evans* (1972), 32 Ohio St.2d 185, 186, 61 O.O.2d 422, 291 N.E.2d 466. Although the trial court's sentence may have been valid under former interpretations of R.C. 2929.14(E)(4), it does not meet the current requirements of the statute as interpreted by *Comer*. For this reason, we must sustain appellant's second assignment of error.

## ASSIGNMENT OF ERROR NO. 4

{¶ 83} "The trial court erred when it failed to merge counts seven, eight, and nine for the purpose of sentencing."

{¶ 84} Appellant contends that the three counts of complicity to rape contained in counts seven, eight, and nine constituted one continuous course of action and should not have been divided into three separate crimes. Appellant concedes that his own direct actions qualified as separate acts of oral, anal, and vaginal rape. Appellant asserts, though, that his complicity in the similar acts of rape committed by codefendant Bunch was only one act of complicity, regardless of how many times Bunch raped M.K. Appellant does not present any further explanation of his position, other than a brief mention that aiding and abetting another to commit multiple acts of rape should be merged as allied offenses of similar import under R.C. 2941.25.

{¶ 85} Appellee contends that this argument has been waived because no objection was made at the sentencing hearing concerning allied offenses of similar import. Appellee is correct that questions regarding allied offenses of similar import are waived if not properly raised before the trial court. *State v. Comen* (1990), 50 Ohio St.3d 206, 211, 553 N.E.2d 640. Appellant, though, later asserts that his counsel was ineffective for failing to raise this issue at trial. For this reason, we need to review appellant's assignment of error because our answer may affect our review of one of the remaining assignments of error.

{¶ 86} As stated earlier, allied offenses of similar import are governed by R.C. 2941.25, which provides a two-tiered analysis for determining

whether multiple punishments can be imposed for similar crimes. First, the elements of the crime are compared in the abstract, to see if the elements are such that commission of one offense will necessarily result in the commission of the other. *State v. Rance* (1999), 85 Ohio St.3d 632, 636, 710 N.E.2d 699. Second, if the crimes do overlap so as to be allied offenses of similar import, a court must determine whether the crimes were committed separately or with separate animus. If the crimes were committed separately or with separate animus, multiple punishments may be imposed for each separate crime. *State v. Jones* (1997), 78 Ohio St.3d 12, 14, 676 N.E.2d 80. The overall facts and circumstances of a case, rather than any specific factor, determine whether crimes were committed with separate animus. Id.

{¶ 87} Both appellant and appellee argue that the three counts of complicity to rape contain the same elements and are allied offenses. This is not technically correct, because they are actually the same offenses, not allied offenses. Nevertheless, whether the crimes are exactly the same or are allied offenses of similar import, the remaining issue to be resolved under R.C. 2941.25(B) is whether the crimes were committed separately or with separate animus.

{¶ 88} Appellant admits that oral rape is distinct from anal rape, which is also distinct from vaginal rape. It is well-settled law that entry into separate orifices, or entry with separate body parts, constitutes separate acts of rape. *State v. Barnes* (1981), 68 Ohio St.2d 13, 14, 22 O.O.3d 126, 427 N.E.2d 517; *State v. Duffey* (Nov. 13, 1990), 7th Dist. No. 90–B–1, 1990 WL 176818. As stated in *Barnes:*

{¶ 89} " 'Repeated acts of forcible sexual intercourse are not to be construed as a roll of thunder,—an echo of a single sound rebounding until attenuated. One should not be allowed to take advantage of the fact that he has already committed one sexual assault on the victim and thereby be permitted to commit further assaults on the same person with no risk of further punishment for each assault committed. Each act is a further denigration of the victim's integrity and a further danger to the victim.' " Id. at 19, 22 O.O.3d 126, 427 N.E.2d 517 (Celebrezze, J., concurring), quoting *Harrell v. State* (1979), 88 Wis.2d 546, 565, 277 N.W.2d 462.

{¶ 90} Appellant was charged with three counts of aiding and abetting another in the rape of M.K. in violation of R.C. 2923.03(A)(2) (the complicity statute) and R.C. 2907.02(A)(2) (the rape statute). This aiding and abetting consisted of holding M.K.'s head while another person orally raped her, holding her against her car while another person anally raped her, pointing a gun at her while another person raped her, orally raping her to aid another in vaginal rape, and vaginally raping her to aid another in oral rape. For the same reasons set forth in *Barnes,* supra, a person should not be permitted to aid another in committing

one denigration after another against a person simply because the rape crimes are committed in rapid succession. Each act appellant committed to aid a codefendant in another act of rape, whether it be a forceful grab of the head, a shove to the car, a push to ground, or the wave of a gun, furthered each successive criminal act committed against M.K. and warranted its own separate criminal punishment.

{¶ 91} For these reasons, we find appellant's reasoning unpersuasive, and we overrule his fourth assignment of error.

## ASSIGNMENT OF ERROR NO. 3

{¶ 92} "The trial court abused its discretion in overruling appellant's motion to continue the sentencing hearing and denied appellant effective assistance of counsel."

{¶ 93} Appellant argues that the trial court should have sustained counsel's motion for a continuance of the sentencing hearing. The jury rendered its verdict on October 2, 2002, and the sentencing hearing was scheduled for October 23, 2002. On October 17, 2002, appellant's counsel filed a motion to continue the sentencing hearing because he was attending to the needs of his newborn child in the neonatal intensive care unit of Rainbow Babies and Children's Hospital in Cleveland. The court overruled the motion, without additional comment or explanation, on October 21, 2002. Appellant was represented at the sentencing hearing by another attorney. The record of the sentencing hearing indicates that this attorney had only 24 hours to review the case prior to the hearing.

{¶ 94} The error alleged by appellant in this assignment of error is not clear. Appellant presents the error as one made by the trial court (possibly a due-process error in denying the continuance), but cites only one case, *McMann v. Richardson* (1970), 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763, which deals with ineffective assistance of counsel. Appellee has approached this assignment of error as if appellant is arguing ineffective assistance of counsel at sentencing, and this approach appears to be the most reasonable one for us to take in reviewing the matter.

{¶ 95} The law governing ineffective assistance of counsel was succinctly summarized in *State v. Brooks* (1986), 25 Ohio St.3d 144, 25 OBR 190, 495 N.E.2d 407:

{¶ 96} "In *Strickland v. Washington* (1984), 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674], the court determined the standard to be used in reviewing claims of ineffectiveness. 'The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' Id. at 686 [104 S.Ct. at 2064, 80 L.Ed.2d 674]. The court proceeded to devise a two-

part test for reviewing claims of ineffectiveness: 'A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.' Id. at 687 [104 S.Ct. at 2064, 80 L.Ed.2d 674]. This court in *State v. Lytle* (1976), 48 Ohio St.2d 391 [2 O.O.3d 495, 358 N.E.2d 623], devised a substantially similar test: 'When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next * * * there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness.' Id. at 396–397 [2 O.O.3d 495, 358 N.E.2d 623]." Id. at 147–148, 25 OBR 190, 495 N.E.2d 407.

{¶ 97} Appellant first contends that his attorney failed to make an effective argument as to why some or all of the firearm specifications should have been merged. We have already addressed and corrected the error raised in appellant's first assignment of error, dealing with the firearm specifications. It would be difficult to see how appellant could have been prejudiced by his counsel's actions at the sentencing hearing when the matter was preserved for review and corrected on appeal. Counsel properly objected to multiple firearm specifications, and his actions do not constitute ineffective assistance of counsel.

{¶ 98} Appellant also argues that his counsel should have made a more effective argument to convince the trial judge to merge the sentences for counts seven, eight, and nine (complicity to rape). As explained in the analysis of assignment of error four above, the trial court did not err in imposing separate sentences for counts seven, eight, and nine, because each separate count of complicity to rape was committed with separate animus and could be separately punished. Counsel did not err by failing to assert at trial what would have been erroneous legal arguments.

{¶ 99} Appellant has failed to show that his counsel was ineffective or that he was prejudiced by his counsel's actions, and therefore the third assignment of error is overruled.

## SUPPLEMENTAL ASSIGNMENT OF ERROR

{¶ 100} "The trial court erred when it sentenced appellant, who had never been to prison to maximum terms of imprisonment. The court deprived appellant of his Sixth Amendment right to trial by jury."

{¶ 101} On November 2, 2004, appellant filed a supplemental assignment of error. There is no indication that appellant sought leave from this court to file and assert this additional assignment of error, which was filed long after the briefs were submitted for this appeal. Appellant is now attempting to raise an issue relating to the recent United States Supreme Court case of *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, which was decided on June 24, 2004. *Blakely* held that part of Washington's felony sentencing scheme violated the Sixth Amendment right to jury trial because it allowed the trial judge to impose an exceptional sentence based on facts that were neither admitted by the defendant nor found by a jury. Appellant argues that the holding in *Blakely* prevented the trial court from imposing any sentence other than the minimum possible sentence under Ohio law.

{¶ 102} This court recently held that a criminal defendant could not raise a *Blakely* argument on appeal if it had not first been raised at the trial court level:

{¶ 103} "Any sentencing challenge available to the defendant under *Blakely* is waived, because he did not object at trial to what he now contends is a violation of his constitutional right to a jury trial. See, e.g., *State v. Awan* (1986), 22 Ohio St.3d 120, 123, 22 OBR 199, 489 N.E.2d 277; *State v. Ireson* (1991), 72 Ohio App.3d 235, 240, 594 N.E.2d 165; cf. *Gibson v. Meadow Gold Dairy* (2000), 88 Ohio St.3d 201, 204, 724 N.E.2d 787.

{¶ 104} "The fact that *Blakely* was decided after Appellant had submitted his brief on appeal, and after oral argument had been held, is not determinative in our analysis. The issues that were under review in *Blakely* were previously reviewed many times by the United States Supreme Court and by legions of lower federal court and state court decisions. *Blakely* is only the most recent progeny of a line of cases that includes the seminal case of *Apprendi v. New Jersey* (2000), 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435. In *Apprendi*, the defendant pleaded guilty to firearm possession charges as part of a plea agreement. During sentencing, the trial court determined that the crime was committed with the purpose to intimidate because of race, in violation of New Jersey's hate-crime statute. The finding by the trial court elevated the penalty from a maximum of 10 years to a period of 10 to 20 years.

{¶ 105} "*Apprendi* held that, 'it is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such

facts must be established by proof beyond a reasonable doubt.' Id. at 490, 120 S.Ct. 2348, 147 L.Ed.2d 435; see also *Ring v. Arizona* (2002), 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556; *Harris v. United States* (2002), 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524.

{¶ 106} "The argument that Appellant is now attempting to assert under the authority of *Blakely* is essentially the same argument raised in *Apprendi*. The *Apprendi* case was decided on June 26, 2000, long before Appellant was convicted and sentenced * * *. *Apprendi* was decided three and one half years before Appellant's substitute counsel submitted his first supplemental brief on appeal, and any issues related to the constitutionality of Ohio's sentencing scheme certainly could have been, and should have been, raised at that time. Furthermore, *Blakely* dealt with well-established, rather than novel, constitutional rights, which must be timely raised at trial in order to be preserved as issues on appeal. See *Awan*, supra, 22 Ohio St.3d at 123 [489 N.E.2d 277]. We are not in the habit of allowing parties to raise additional arguments in the eleventh hour on appeal that could have been raised at trial or within the time limits set forth in the Ohio Rules of Appellate Procedure. In fact, this would violate one of the most basic tenets of appellate review.

{¶ 107} "Furthermore, it does not appear [that] Ohio's felony sentencing scheme would run afoul of the holdings in *Apprendi* and *Blakely*. *Blakely* stands for the proposition that, under the Sixth Amendment, 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' *Blakely*, [542 U.S. 296] 124 S.Ct. at 2536, 159 L.Ed.2d 403. In *Blakely*, the 'statutory maximum' is not the longest term the defendant can receive under any set of circumstances. Instead, it is, 'the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.' Id. [542 U.S. 296, 124 S.Ct.] at 2537, 159 L.Ed.2d 403. In Ohio, the trial judge does not have the discretion to impose a sentence greater than the sentence prescribed for each crime as listed in the indictment. For example, Appellant was charged and convicted on two counts of aggravated burglary, in violation of R.C. § 2911.11(A)(1). Aggravated burglary is designated as a first degree felony, which is punishable by three to ten years in prison. R.C. § 2929.14(A)(1). Once a jury makes the findings that establish that the crime of aggravated burglary has been committed, the trial court has discretionary power to impose a punishment within the statutory range for a first degree felony. Unlike the statutes at issue in *Blakely*, Ohio's statutory scheme does not provide exceptions to give the trial court power to exceed the maximum punishment allowed by the aggravated burglary statute. Any sentencing enhancements, such as gun specifications, must

also be included in the indictment, and the jury must find the defendant guilty beyond a reasonable doubt of those enhancements as well.

{¶ 108} "We agree with those Ohio courts that have already concluded that the Ohio felony sentencing scheme does not violate the holdings in *Apprendi* and *Blakely.* See, e.g. *State v. Scheer,* 4th Dist. No. 03CA21, [158 Ohio App.3d 432] 2004-Ohio-4792 [816 N.E.2d 602]; *State v. Sour,* 2nd Dist. No. 11913, 2004-Ohio-4048 [2004 WL 1728579]; *State v. Bell,* 1st Dist. No. C030726, 2004-Ohio-3621 [2004 WL 1531904]." *State v. Barnette,* 7th Dist. No. 02 CA 65, 2004-Ohio-7211, 2004 WL 3090228, ¶ 102–107.

{¶ 109} Furthermore, the United States Supreme Court has recently released yet another decision in the *Apprendi* line of cases that clarifies some aspects of the *Blakely* case. In *United States v. Booker,* 543 U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621, decided on January 12, 2005, the Supreme Court held that the Federal Sentencing Guidelines were unconstitutional to the extent that they imposed a mandatory duty on federal trial judges to impose criminal sentences based on findings of fact that were not previously determined by a jury, or that had not been previously admitted by the defendant. The Supreme Court held that it was the mandatory aspect of the Guidelines that offended the requirements of the Sixth Amendment right to jury trial. *Booker* held:

{¶ 110} "We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. See *Apprendi,* 530 U.S., at 481 [120 S.Ct. 2348, 147 L.Ed.2d 435]; *Williams v. New York,* 337 U.S. 241, 246 [69 S.Ct. 1079, 93 L.Ed. 1337] (1949). Indeed, everyone agrees that the constitutional issues presented by these cases would have been avoided entirely if Congress had omitted from the SRA the provisions that make the Guidelines binding on district judges; it is that circumstance that makes the Court's answer to the second question presented possible. For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." Id., 543 U.S. ——, 125 S.Ct. at 750, 160 L.Ed.2d 621.

{¶ 111} *Booker* would seem to confirm this court's holding in *Barnette* that Ohio's felony sentencing scheme does not violate the Sixth Amendment right to jury trial as long as the trial judge imposes a sentence within the statutory range established for each crime as set forth in the indictment.

{¶ 112} Furthermore, *Booker* also agrees with this court's conclusion that when a defendant raises *Apprendi* and *Blakely* issues on appeal, the normal rules of appellate interpretation and review apply:

{¶ 113} "[W]e expect reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the 'plain error' test. It is also because, in cases not involving a Sixth Amend-

ment violation, whether resentencing is warranted or whether it will instead be sufficient to review a sentence for reasonableness may depend upon application of the harmless-error doctrine." Id., 543 U.S. ——, 125 S.Ct. at 769, 160 L.Ed.2d 621.

{¶ 114} Appellant did not raise his constitutional jury-trial issue with the trial court and failed to raise it in his initial brief on appeal. Likewise, he was deficient in failing to request and receive permission to assert these claims out of rule. The issue now asserted by appellant is not significantly different than the constitutional issue raised in *Apprendi*, which was decided on June 26, 2000, and could have been raised at an earlier point in the proceedings. Just as this court decided in *Barnette*, because appellant failed to correctly raise these procedurally, he has waived this issue for purposes of appeal. For all the foregoing reasons, appellant's supplemental assignment of error is overruled.

## CONCLUSIONS

{¶ 115} We sustain appellant's first and second assignment of errors, and thus the judgment of the Mahoning County Court of Common Pleas is affirmed in part and reversed and vacated in part, and the cause is remanded for resentencing. Because of a fatal error in the indictment, we hereby reverse and vacate appellant's conviction and sentence for conspiracy to commit aggravated robbery, along with the concomitant firearm specification, and dismiss count 11 of the indictment. All other convictions are affirmed. As to sentencing, the trial court failed to comply with the statutory requirements for imposing consecutive sentences, as interpreted by the Ohio Supreme Court in *Comer*. Therefore, we reverse and vacate the remaining sentences and remand this case for resentencing. As stated earlier, if the trial court determines upon resentencing that consecutive sentences are warranted, the court must comply with the requirements of R.C. 2929.14(E)(4) and 2929.19(B)(2)(c), as interpreted by *Comer*. Furthermore, in sustaining appellant's first assignment of error, we direct the trial court to impose, at most, one penalty for the firearm specifications in counts two and three of the indictment (referring to the aggravated robbery of Jason Cosa and Christine Hammond) and, at most, three penalties for the firearm specifications in counts one, four, five, six, seven, eight, nine, and ten. We remand this case to the Mahoning County Court of Common Pleas for further proceedings consistent with this opinion.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

VUKOVICH, J., concurs.

DEGENARO, J., concurs in judgment only.

DEGENARO, Judge, concurring in judgment only.

{¶ 116} I agree with much of the majority's opinion. Moore's indictment did not sufficiently allege the charge of conspiracy against him, so that conviction must be vacated. The trial court did not make the findings necessary to support consecutive sentences, so the case must be remanded for resentencing. The trial court did not err when refusing to merge the three counts of complicity to commit rape, since each offense was committed with a separate animus. And the trial court did not err by refusing to continue Moore's sentencing hearing. I write separately for two reasons.

{¶ 117} First, I disagree with the manner in which the panel deals with Moore's first assignment of error. I agree with the majority that the trial court erred when it refused to merge some of the firearm specifications when sentencing Moore, but disagree with its decision to limit the trial court by saying that it can impose, at most, four consecutive prison terms for the various firearm specifications. I believe that the decision over exactly how many firearm specifications should be imposed when this case is remanded should be left to the trial court. What constitutes a transaction is fact-driven, and we should leave that decision as much as possible to the trial court in its role as fact-finder.

{¶ 118} Second, and more important, I disagree with the majority's resolution of Moore's supplemental assignment of error. In that assignment of error, Moore argues that his sentence violated his Sixth Amendment right to a jury trial as that right has been interpreted in *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403. The majority rejects this argument, primarily relying on this court's prior decision in *State v. Barnette*, 7th Dist. No. 02 CA 65, 2004-Ohio-7211, 2004 WL 3090228. I dissented from that decision and will continue to do so whenever appropriate until the Ohio Supreme Court has resolved the issue.[1] Moore did not waive his Sixth Amendment argument, and his sentence violates the Sixth Amendment as interpreted by *Blakely*. The trial court could not sentence him to more than the minimum sentence for any of his separate offenses.

{¶ 119} Nevertheless, I cannot simply cite my prior decision as support for this dissent. The majority cites *United States v. Booker* (2005), 543 U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621, as further support for its position that Moore waived this argument and that *Blakely*-type analysis does not apply in Ohio. But this conclusion ignores the substance of the *Booker* decision. First, as the majority

---

1. These issues are currently pending before that court in the consolidated cases of *State v. Foster*, 5th Dist. No. 03CA95, 2004-Ohio-4209, 2004 WL 1789514 (Supreme Court case No. 2004–1568), and *State v. Quinones*, 8th Dist. No. 83720, 2004-Ohio-4485, 2004 WL 1903250 (Supreme Court case No. 2004–1771).

quotes, *Booker* states that courts should "apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the 'plain error' test." Id., 543 U.S. ——, 125 S.Ct. at 769, 160 L.Ed.2d 621. By concluding that Moore waived the issue without conducting a plain, error analysis, the majority clearly is not following the court's direction.

{¶ 120} But just as important is the majority's failure to recognize that *Booker* does not offer it support in its conclusion that *Blakely*-type analysis does not apply to Ohio. As the First District recognized in *State v. Bruce,* 159 Ohio App.3d 562, 2005-Ohio-373, 824 N.E.2d 609, and *State v. Montgomery,* 159 Ohio App.3d 752, 2005-Ohio-1018, 825 N.E.2d 250, *Booker* demonstrates that *Blakely*'s analysis applies to Ohio's sentencing structure. *Booker* does not change or alter in any way *Blakely*'s fundamental contribution to the law, the definition of "statutory maximum" for Sixth Amendment purposes. The majority's cursory analysis to the contrary does not do the issue justice.

{¶ 121} In conclusion, I cannot fully concur with the majority's opinion for two reasons. First, I do not believe that we should tell the trial court how many consecutive gun specifications it may give in this case. Second, I believe that the trial court could not constitutionally sentence Moore to more than the minimum sentence for each of his separate offenses.