OPINION
{¶ 1} Defendant-appellant, Dannielle Kuykendall, appeals a decision of the Clermont County Court of Common Pleas sentencing her to prison after she violated the terms of her community control sanction.
 {¶ 2} Appellant was indicted on two counts of receiving stolen property and six counts of forgery on October 15, 2003. She pled guilty to two counts of receiving stolen property (Counts I and II) and two counts of forgery (Counts III and IV) and the other counts were dismissed. On December 10, 2003, the trial court sentenced her to five years of community control.
 {¶ 3} On November 8, 2004, appellant admitted to violating her community control sanction. The trial court held a sentencing hearing on November 22, 2004 and determined that appellant was no longer amenable to community control. The court imposed eleven month sentences on Counts I and III, to be served consecutively. The court also imposed eleven month sentences on Counts II and IV, and ordered them to run concurrent to each other and to the sentences imposed in Counts I and III.
 {¶ 4} Appellant now appeals the trial court's sentencing decision and raises the following two assignments of error for our review:
 {¶ 5} "THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO A NONMINIMUM TERM OF IMPRISONMENT."
 {¶ 6} "THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO CONSECUTIVE TERMS OF IMPRISONMENT."
 {¶ 7} In her first assignment of error, appellant argues that the trial court's imposition of a nonminimum sentence violated the rule expressed by the United States Supreme Court in Blakelyv. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531, because the trial court, not a jury, made the additional findings necessary for imposing the sentence. However, this court has previously held that the findings in R.C. 2929.14(B), necessary to impose a nonminimum sentence on a first time offender, are meant to assist the court in determining the appropriate sentence from within the range set by R.C. 2929.14(A) and are not additional findings which enhance a sentence beyond the statutory range. State v.Farley, Butler App. No. CA2004-040-85, 2005-Ohio-2367; see, also, State v. Combs, Butler App. No. CA2000-03-047,2005-Ohio-1923. Therefore, appellant's first assignment of error is overruled.
 {¶ 8} In her second assignment of error, appellant contends that the trial court erred in imposing consecutive sentences. R.C. 2929.14(E)(4) provides that when multiple prison terms are imposed on an offender for convictions of multiple offenses, a court may order the sentences to be served consecutively if it makes three distinct findings: First, the court must determine that "the consecutive service is necessary to protect the public from future crime or to punish the offender." R.C. 2929.14(E)(4). Second, the court must find "that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." Id. Third, the court must find one of the following:
 {¶ 9} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 10} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 11} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 12} In addition to making these three findings, the sentencing court must also state reasons to support the findings. R.C. 2929.19(B)(2). In State v. Comer, 99 Ohio St.3d 463,2003-Ohio-4165, the Ohio Supreme Court determined that these findings and the supporting reasons must be stated on the record at the sentencing hearing. Appellant argues on appeal that the trial court failed to make the second finding above, that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public."
 {¶ 13} When Senate Bill 2 went into effect on July 1, 1996, it provided comprehensive changes to Ohio's felony sentencing law. Prior to the enactment of Senate Bill 2, trial courts had virtually unlimited discretion in choosing a sentence within the statutory guidelines. See, e.g., State v. Hill,70 Ohio St.3d 25, 29, 1994-Ohio-12. Judges could generally impose any sentence they determined to be appropriate as long as it was not more than the maximum or less than the minimum provided by the statute and an appellate court's review was limited to whether the sentence was an abuse of discretion. State v. Beasley (1984),14 Ohio St.2d 331.
 {¶ 14} The current felony sentencing statute still vests considerable discretion in trial courts to choose an appropriate sentence. However, this discretion is now exercised within a statutory framework in which certain factors must be considered and mandatory findings and reasons are required for the imposition of certain types of sentences. Senate Bill 2 "placed various controls on judicial discretion through statutory guidelines stating various purposes, principles, presumptions and factors a court must consider in making its sentencing determination." State v. Dunwoody (Aug. 5, 1998), Meigs App. No. 97-CA-11.
 {¶ 15} Although the new sentencing scheme has been in effect nearly ten years now, trial courts continue to struggle to determine precisely what is required to impose a particular felony sentence. Likewise, appellate courts have expressed frustration as they attempt to determine whether a trial court has complied with the statute. See, e.g., State v. Snyder,
Hocking Co. App. No. 02CA2, 2002-Ohio-3756, fn.3 ("we are in the unenviable position of attempting to fully comply with the complex and convoluted sentencing requirements currently included in the Ohio Revised Code"). Complying with felony sentencing law became more complicated for trial courts when the Ohio Supreme Court determined in State v. Comer, 99 Ohio St.3d 463,2003-Ohio-4165, that certain findings must be made on the record at the sentencing hearing. See State v. Moore (2005),161 Ohio App.3d 778, 2005-Ohio-3311, ¶ 81 ("in light of the recent Comer
decision, it is becoming increasingly difficult to affirm the imposition of consecutive sentences when the trial court does not follow the language and format of the statute").
 {¶ 16} With this in mind, we turn to the facts of the case before us. This case presents the question of what a court is required to state on the record in order to impose consecutive sentences on an offender. As mentioned above, the imposition of consecutive sentences requires three findings by the trial court, along with reasons to support those findings. Appellant argues that the trial court failed to make a finding that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public."
 {¶ 17} At the sentencing hearing, the trial court determined that appellant was not amenable to community control, and that a prison sentence was appropriate. It next determined that a nonminimum sentence was appropriate and made the findings necessary to impose a prison term greater than the minimum.
 {¶ 18} The court then stated:
 {¶ 19} "I note that based upon when I placed you on community control at the time of committing the offense that you had been under previous sanctions imposed — non-residential sanctions for theft and forgery; that you have numerous criminal convictions, including but not limited to passing bad checks, three counts of theft, three counts of forgery, four counts of receiving stolen property — which are similar to the offenses for which you were found guilty before me. That at the time of the sentencing I indicated that consecutive sentencing would be called for based upon the fact that these were committed while on community control sanctions if you did not comply with your community control.
 {¶ 20} "Again, giving you every opportunity to try to get yourself straightened out and giving every opportunity to comply, which you have failed to do, I find that consecutive sentencing is still called for. But, at this point I am going to impose consecutive sentencing on Counts 1, receiving stolen property, and on Count 3, which is the forgery. Count 2 will be served concurrently. Count 4 will be served concurrently. So — and at this time the minimum sentence would fail to protect the public or adequately punish the offender because you continue to reoffend and refuse to follow any and all treatment modality. So with that in mind, I'm going to impose 11 months on each count. Eleven months consecutive on Count 1, consecutive with Count 3. Counts 2 and 4 will be served concurrently. Anything further?"
 {¶ 21} At this point, defense counsel objected to any factual findings, and the trial court asked the state if there was anything further. The prosecutor responded, "Judge, just the necessary findings for consecutive sentences." The trial court then stated, "The sentences, by the way, are not disproportionate to the protection that is necessary or the harm occasioned by the victim. I think that takes care of it. Any other Potteresque incantations that the 12th requires?"
 {¶ 22} The prosecutor responded by questioning whether the court made the findings that consecutive sentences were appropriate to protect the public from future crimes. The court indicated, "I think I said that," but continued, "But I will reiterate it that's — if I haven't said that — if I haven't verbalized that. I alluded to that certainly and I will say it. It needs to be said. It is necessary to protect the public * * * from future crimes." At this point, defense counsel stated, "Please note our objections"[1] and the hearing was concluded.
 {¶ 23} The state contends that the trial court's statement that "the sentences * * * are not disproportionate to the protection that is necessary or the harm occasioned by the victim" is "elliptical" for "consecutive sentences are necessary to protect the public and punish the offender and consecutive sentences are not disproportionate to the conduct and danger the offender poses." The state further argues that the trial court's brevity did not sacrifice clarity and that the idea that society must be protected and the offender punished is obvious from the trial court's statements.
 {¶ 24} This court and numerous other courts have consistently held that a trial court is not required to state any talismanic, or as the trial court referred to it, "Potteresque,"[2]
language when imposing a sentence. See, e.g., State v. Boshko
(2000), 139 Ohio App.3d 838. The statutory language itself does not have magical powers. Instead, it is merely a vehicle to ensure that the trial court engaged in the required analysis. However, appellate review of a trial court's statements at the sentencing hearing becomes increasingly difficult when the trial court does not at least track the language of the statute to some extent. See Moore, 161 Ohio App.3d 778, ¶ 81; State v.McCarthy, Belmont App. No. 01 BA 33, 2002-Ohio-5185, ¶ 12. If the precise words of the statute are not used, it must be clear from the record that the trial court engaged in the appropriate analysis. See, e.g., State v. Brooks, Cuyahoga App. No. 8652, 2005-Ohio 6015, ¶ 20. In other words, the trial court must make an "equivalent finding to the factor that it finds exists,"State v. Perry, Mahoning App. No. 02 CA 182, 2003-Ohio-7000, ¶14, or one that uses "conceptually equivalent phraseology."State v. Lenigar, Franklin App. No. 03-AP-53, 2003-Ohio-5493, ¶ 15.
 {¶ 25} The failure to track the wording of the statute forces appellate courts to conduct an analysis of the linguistic equivalency of the trial court's statements as compared to the language of the statute. This analysis is difficult and the result is not always predictable. Furthermore, an appellate court's review is constrained by the written transcription of the sentencing hearing, which is devoid of any emphasis, inflection or emotion.
 {¶ 26} In recent cases, courts that were forced into this equivalency analysis have struggled to make determinations such as a "high factor of recidivism" is not the equivalent of "greatest likelihood," although stating "highest likelihood" may be equivalent. Perry, 2003-Ohio-7000, ¶ 14. Another example includes a finding that "the chance of recidivism is high" is not the equivalent of "the greatest likelihood of future crimes."Lenigar, 2003-Ohio-5493, ¶ 15. Likewise, a trial court's recognition that it had previously classified a defendant a sexual predator was found not to be the equivalent of "greatest likelihood" of recidivism because the sexual predator standard requires only that the defendant be "likely to engage in future offenses." Id. at ¶ 16. Another court examining "a great risk" and "greatest risk" found the two are not equivalent. McCarthy,
2002-Ohio-5185, ¶ 12.
 {¶ 27} This court recently engaged in an equivalency analysis when it determined that a trial court's statements that "prison was appropriate [and] community control at this time would not be appropriate" was the equivalent of finding that the defendant was "not amenable to community control." State v. Marple, Clermont App. No. CA2004-09-073, 2005-Ohio-6272.
 {¶ 28} Because the trial court in this case did not track the language of the statute, we must now determine whether the court's statement that "the sentences * * * are not disproportionate to the protection that is necessary or the harm occasioned by the victim" is equivalent to finding that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and danger the offender poses to the public." The required finding involves an analysis into whether requiring a defendant to serve multiple terms consecutively is proportionate to both the conduct committed by the offender and the danger the offender poses.
 {¶ 29} After carefully considering the trial court's statements as compared to the required statutory findings, we can not find that the court engaged in the appropriate analysis. The trial court's statements regarding the "protection that is necessary" may suffice as the equivalent of an analysis into the "danger the offender poses." However, the statements are completely lacking any indication that the court considered whether imposing consecutive sentences was proportional to the "seriousness of the offender's conduct." Instead, the trial court's statement focuses on the "harm occasioned by the victim." While the harm caused to the victim may be a reason supporting a seriousness finding, no such finding was specifically made, nor can it be implied from the court's statement that it engaged in this analysis.
 {¶ 30} Furthermore, the trial court failed to clearly align any reasons with its findings as required. See State v. Comer,99 Ohio St.3d 463, 2003-Ohio-4165, ¶ 21. While this court has held that "clearly align" does not mean that the reasons must always be stated directly after the required finding, it must be clear from the record what reasons the trial court used in making its findings. State v. Ebbing, Clermont App. No. CA2003-05-041,2003-Ohio-5877. Although from reviewing the record in this case, sufficient reasons may exist for making these findings, the trial court failed to state, or to clearly align these reasons with its findings. Therefore, appellant's second assignment or error is sustained.
 {¶ 31} Our holding in this case is not meant to add further complexity to an already complex body of law regarding felony sentencing. Instead, we encourage courts to use the framework provided by the statute, with the precise language of the statute, following each finding with reasons where necessary. See Comer at ¶ 10 ("the trial court must follow an articulated process when determining a sentence"); State v. Edmonson,86 Ohio St.3d 324, 327, 1999-Ohio-110, (the statute mandates "a record reflecting that judges considered certain factors and presumptions to confirm that the court's decision making process included all of the statutorily required sentencing considerations"). The purpose of the statute is to provide a framework within which a trial court exercises its discretion. If the trial court follows this framework, explicitly on the record, when imposing a sentence, it will have engaged in the required analysis and compliance with the statute will be readily evident on appellate review.
 {¶ 32} In conclusion, we affirm the trial court's decision imposing a nonminimum sentence on appellant. However, because the trial court failed to make the required findings for imposing consecutive sentences and failed to state reasons to support those findings, the portion of appellant's sentence imposing consecutive sentences is vacated and the matter is remanded to the trial court for resentencing.[3]
 {¶ 33} Judgment affirmed in part, reversed in part, and remanded for resentencing in accordance with this opinion.
Powell, P.J., and Walsh, J., concur.
[1] Prior to the November 22, 2004 sentencing hearing, defense counsel was granted a continuance to research the issue of whether Blakely v. Washington (2004), 524 U.S. 296,124 S.Ct. 2531, applied to Ohio sentencing. At the start of the sentencing hearing, the court found Blakely did not apply, and defense counsel objected at several points in the hearing to factual findings pursuant to the Blakely decision. Although it is likely that defense counsel's objection at this point was on the same basis, the trial court did not inquire further into the basis for the objection. Therefore, because the precise basis for the objection was not clarified, we can not say that appellant waived any objection to the trial court's failure to make the required sentencing findings during the hearing under our holding in State v. Fields, Butler App. Nos. CA2005-03-067, CA2005-03-068, 2005-Ohio-6270.
[2] We assume that the trial court is referring to the fictional character Harry Potter in the books by J.K. Rowling. In the magical world of Harry Potter, the failure to follow not only the precise words, but also the correct pronunciation of a spell may lead to disastrous results. For example, in an early lesson on levitation, Professor Flitwick admonishes students that saying the magic words properly is important, and uses the example of a wizard who said "s" in stead of "f" and ended up with a buffalo on his chest. J.K. Rowling, Harry Potter and the Sorcer's Stone
171 (Scholastic 1998). While the failure of a trial court judge to say the necessary words at a sentencing hearing may not result in a buffalo on the chest, it may result in a remand.
[3] We note that appellant also argues within her second assignment of error that the imposition of consecutive sentences violates her constitutional right to have a jury determine any facts which increase her sentence beyond the statutory maximum as discussed in Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531. While this court has previously held that the imposition of consecutive sentences does not violate this right,State v. Collier, Butler App. No. CA2003-11-282, 2005-Ohio-944, this issue is rendered moot because the consecutive sentences have been vacated and the matter must be remanded for resentencing.