[Cite as *State v. Oren*, 2013-Ohio-531.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY

STATE OF OHIO,                              :

    Plaintiff-Appellee,                  :          CASE NO.   CA2012-05-010

    - vs -                                       :          O P I N I O N
                                                        2/19/2013
                                                 :

DONNIE M. OREN,                              :

    Defendant-Appellant.                 :


CRIMINAL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CRI 2011-0096


Stephen J. Pronai, Madison County Prosecuting Attorney, Eamon P. Costello, 59 North Main Street, London, Ohio 43140, for plaintiff-appellee

Shannon Marie Treynor, 63 North Main Street, P.O. Box 735, London, Ohio 43140, for defendant-appellant


**PIPER, J.**

{¶ 1}   Defendant-appellant, Donnie Oren, appeals his convictions and sentence in the Madison County Court of Common Pleas for (1) breaking and entering, and (2) theft.

{¶ 2}   The Madison County Sheriff's Office received information that a two-man team was breaking into businesses and vacant houses in order to remove copper wire, pipes, and

other metals, which they would then sell as scrap. The two-man team was later identified as Oren and Westin Moore.[1]

{¶ 3} On June 16, 2011, Rob Conley of MRC Sales reported a theft at his business, and indicated that $1,000 worth of copper wire had been stolen. MRC Sales employed surveillance cameras, and the footage showed two men wearing black hooded sweatshirts stealing the copper wire and later loading it into a Chevrolet conversion van. While police officers investigated the theft at MRC Sales, Sergeant Chris Carter spoke to employees at Cyclemet, a business that purchases scrap metal, and learned that Moore had recently sold 233 pounds of copper wire, 11 pounds of brass, and one pound of stainless steel for $689.68.

{¶ 4} Police soon began visual surveillance on the Chevrolet conversion van used during the theft. On June 20, 2011, officers followed the van, and it stopped near a vacant residence that had been listed for sale. The van stayed at the vacant house for approximately 50 minutes, and then left the location. Officers then performed a stop on the van, and Moore, Oren, and a woman were apprehended. The van was impounded, and officers discovered a large amount of copper pipe and wire in a plastic tub, along with bolt cutters. The officers moved for and were granted a search warrant to continue searching the van. Officers discovered another tub containing copper pipe and wire, gloves, bolt cutters, wire cutters, flash lights, as well as a black hooded sweatshirt that matched the one seen on the surveillance video from MRC Sales. The pipe and wire found in the van were confirmed

---

1. No evidentiary hearings were conducted during this case. Instead, the parties agreed to a stipulation of facts based upon the investigation summary from Sergeant Chris Carter. The parties submitted a joint "Statement of Evidence" to this court pursuant to App.R. 9(C), which consisted of Sergeant Carter's investigation summary as well as copies of receipts referenced in the investigation summary. The parties also stated their acknowledgment that this court "will also review the contents of the pre-sentence investigation" report. Therefore, this court's statement of facts and following analysis are based upon the stipulation of facts and information contained within the presentence investigation report.

to have been removed from the vacant house, and the owner of the home stated that his loss was $4,000.

{¶ 5}   Oren, Moore, and their female companion were taken to the police station, and advised of their *Miranda* rights, which they all waived.  During their interviews, Moore and Oren admitted to the theft of copper wire and pipe at the vacant house, and also to the theft at MRC Sales.  Oren was indicted on six counts of breaking and entering, possession of criminal tools, and theft, with one count of each crime specific to the theft at MRC Sales, and the other three specific to the theft at the vacant home.

{¶ 6}   Oren entered guilty pleas to two counts of breaking and entering and two counts of theft, and the other two counts of possession of criminal tools were dismissed.  The trial court ordered a presentence investigation report, and scheduled a sentencing hearing for October 14, 2011.  However, Oren did not appear for sentencing and was at large for several months.  Sentencing ultimately occurred on May 7, 2012.  The trial court sentenced Oren to one-year sentences on each of the four counts to which he plead guilty, but ordered the sentences for Count Three and Four to run concurrent with the sentence for Count One.  The trial court then ordered the one-year sentence for Count Six to run consecutive to the sentence for Count One, for an aggregate sentence of two years.  The trial court also ordered Oren to pay restitution of $1,000 to the owner of the vacant home.  Oren now appeals his convictions and sentence, raising the following assignments of error:

{¶ 7}   Assignment of Error No. 1:

{¶ 8}   THE COURT ERRED BY SENTENCING THE DEFENDANT TO FELONY THEFT ON COUNTS III AND IV WHEN THE OFFENSES OCCURRED ON JUNE 16 AND 20, 2011 AND HB 86 WAS EFFECTIVE AS OF SEPTEMBER 30, 2011 WHICH RAISED THE THRESHOLD DOLLAR VALUE OF FELONY THEFT FROM $500 TO $1000.

{¶ 9}   Oren argues in his first assignment of error that the trial court erred in convicting

him of felony theft when it should have found him guilty of only a misdemeanor.

**{¶ 10}** Oren's crimes occurred in June 2011, and he was set to be sentenced in October 2011. On September 30, 2011, House Bill 86 became effective, and applied to Oren because he had not yet been sentenced. *State v. Clay*, 12th Dist. No. CA2011-12-016, 2012-Ohio-5011, ¶ 15. According to the version of R.C. 2913.02 in effect after HB 86 became effective, the dollar amount for a felony theft offense was raised from $500 to $1,000. Oren now claims that because his co-defendant, Moore, sold the scrap metal for only $689.86, the state failed to prove that he is subject to a felony of the fifth degree for having committed theft of items valued at $1,000 or more. [2]

**{¶ 11}** Oren did not contest his conviction based on the dollar amount at the time the trial court sentenced him. Therefore, Oren has waived all but plain error. *State v. Gellenbeck,* 12th Dist. No. CA2008-08-030, 2009-Ohio-1731, ¶ 27. According to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error does not exist unless it can be said that, but for the error, the outcome of the trial clearly would have been different. *State v. Palmer,* 12th Dist. No. CA2005-08-097, 2006-Ohio-2712, ¶ 6. Notice of plain error pursuant to Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Long,* 53 Ohio St.2d 91(1978).

**{¶ 12}** According to R.C. 2913.02(B)(2), "a violation of this section is petty theft, a misdemeanor of the first degree. If the value of the property or services stolen is one thousand dollars or more and is less than seven thousand five hundred dollars * * * a

---

2. The indictment, which predates the effective date of HB 86, charges Oren with two counts of theft, and in both counts, the dollar amount specified is "greater than $500 but less than $5,000.00." Therefore, the state never charged Oren with theft limited only to $689.86.

violation of this section is theft, a felony of the fifth degree." When determining the value of stolen items, R.C. 2913.61(D)(2) provides that

> the value of personal effects and household goods, and of materials, supplies, equipment, and fixtures used in the profession, business, trade, occupation, or avocation of its owner * * * and which retains substantial utility for its purpose regardless of its age or condition, is the cost of replacing the property with new property of like kind and quality.

While Oren argues that he should not be charged with a felony because Moore only received $689.68 for selling the scrap, R.C. 2913.61(D)(2) very clearly calculates the value of stolen goods on the cost of replacing the property, rather than an amount of money a defendant receives should he sell the stolen goods.

{¶ 13} The record contains multiple references to the fact that the items stolen from MCR Sales had a value of $1,000 and that the items stolen from the vacant home were valued at $4,000. Sergeant Carter specifically noted in his investigative summary that the copper stolen from MRC Sales was valued at $1,000 and that the home owner received a $4,000 estimate to replace the copper pipe and wiring in the home. These same figures were echoed in the presentence investigation report, as determined by the probation officer based on the victim's statements regarding their loss. Therefore, the trial court had ample evidence before it to conclude that the value of the stolen goods was greater than the amount Moore was able to procure when he sold the items for scrap.

{¶ 14} The $1,000 loss meets the threshold amount for felony theft, and the $4,000 loss exceeds that threshold amount. Therefore, the trial court did not err in convicting Oren of felony theft offenses rather than misdemeanors, and his first assignment of error is overruled.

{¶ 15} Assignment of Error No. 2:

{¶ 16} THE COURT ERRED BY ORDERING RESTITUTION IN THE AMOUNT OF

$1,000 WHEN (1) THE COURT FAILED TO IDENTIFY WHICH VICTIM THIS RESTITUTION IS INTENDED [sic] APPLY, WHEN (2) THERE IS NO CORRELATION BETWEEN THE ACTUAL LOSS SUFFERED BY VICTIM AND THE AMOUNT OF RESTITUTION ORDERED.

{¶ 17} Oren argues in his second assignment of error that the trial court erred by ordering him to pay $1,000 in restitution because the trial court's orders do not direct restitution to either MRC Sales or the owner of the vacant house, and that there is no evidence that either victim suffered $1,000 in loss.

{¶ 18} R.C. 2929.18 specifically provides that a trial court may order the offender to pay restitution to the victim of the offender's crime in an amount based on the victim's economic loss. *State v. Rose*, 12th Dist. No. CA2012-03-050, 2012-Ohio-5957, ¶ 12. "If the court imposes restitution as part of its sentence, it shall determine the amount of restitution to be paid by the offender, and may base the amount of restitution on an amount recommended by the victim, the offender, a presentence investigation report, and other information." *Id.* citing R.C. 2929.18.

{¶ 19} The record is clear that the trial court's judgment entry expressly lists the owner of the vacant home as the party to whom restitution is owed, and that the restitution amount would be $1,000. While Oren argues that there is no correlation between the amount ordered and any damages suffered by either victim, the record contains ample evidence that the homeowner reported his loss at $4,000 based on an estimate he received to repair and replace the copper pipes and wiring. The fact that the trial court did not order the full $4,000, however, does not mean that the trial court did not have evidence before it upon which it could base its restitution amount.

{¶ 20} The governing statute permits the trial court to award restitution based on an amount recommended by the victim, but may also, of course, employ its discretion to award less than what the victim requested. As the record contains evidence that the homeowner

suffered $4,000 in loss, the trial court did not err in awarding the owner $1,000 in restitution. Oren's second assignment of error is overruled.

{¶ 21} Assignment of Error No. 3:

{¶ 22} THE COURT ERRED IN IMPOSING CONSECUTIVE SENTENCES SINCE HB 86 ENACTED R.C. 2929.14(C)(4) WHICH PERMITS CONSECUTIVE SENTENCES IN ONLY LIMITED SITUATIONS.

{¶ 23} Oren argues in his third assignment of error that the trial court erred in ordering him to serve consecutive sentences because the trial court failed to abide by the revived requirement that a trial court make certain findings before imposing consecutive sentences.

{¶ 24} According to R.C. 2929.14(C)(4),

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 25} Before the Ohio Supreme Court determined that making requisite findings was unconstitutional, this court and numerous other courts have consistently held that a trial court

is not required to state any talismanic language when imposing a sentence. *State v. Kuykendall*, 12th Dist. No. CA2004-12-111, 2005-Ohio-6872, ¶ 24. "The statutory language itself does not have magical powers. Instead, it is merely a vehicle to ensure that the trial court engaged in the required analysis." *Id.*

{¶ 26} Although Oren argues that the trial court failed to make the above findings, the record is clear that the trial court's findings comport with the statutory requirements and that it engaged in the required analysis before rendering its sentence. The trial court had for consideration a presentence investigation report, and also allowed Oren to present any mitigating evidence during the sentencing hearing. The trial court specifically stated that it considered the "seriousness and recidivism factors [and] purposes and principles of sentencing" before reaching its decision. The trial court's judgment entry of sentence also expressly references R.C. 2929.11 and R.C. 2929.12 regarding the purposes and principles of sentencing. Moreover, the trial court made the very specific findings required by R.C. 2929.14, as set forth above.

{¶ 27} The statute first requires that the trial court make a finding that "consecutive service is necessary to protect the public from future crime or to punish the offender." R.C. 2929.14(C)(4). During the sentencing hearing, the trial court specifically stated that the sentence it was imposing was "necessary to punish you and protect the public. * * * I find a consecutive sentence is necessary to protect the public* * *." The trial court echoed that finding in the judgment entry of sentencing, and expressly found that "the offender's criminal history shows that consecutive terms are needed to protect the public* * *."

{¶ 28} The statute next requires that the trial court make a finding that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." R.C. 2929.14(C)(4). During the sentencing hearing, the trial court expressly found that "a consecutive sentence is necessary to protect

the public and [is] not disproportionate to your conduct* * *."

{¶ 29} R.C. 2929.14(C)(4) next requires the trial court to make one of three findings: (a) the crime was committed while the defendant was awaiting sentencing on another conviction; (b) at least two of the multiple offenses were committed as part of one or more courses of conduct and a single sentence is inadequate to reflect the seriousness of the offender's conduct; or (c) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. The trial court made specific findings regarding subsections (b) and (c). During the sentencing hearing, the trial court found that Oren's crimes were committed as a "systematic course of criminal conduct." The trial court's judgment entry of sentencing also states that "the harm was so great that a single term does not adequately reflect the seriousness of the offender's conduct * * *."

{¶ 30} The trial court also found during the sentencing hearing that Oren's "criminal history demonstrates that consecutive sentences are necessary to protect the public." The trial court's judgment entry of sentence reiterates the fact that Oren had a "lengthy criminal history," a high risk of recidivism, and that Oren had not responded well to sanctions in the past.

{¶ 31} After reviewing the record, we cannot say that the trial court failed to make the requisite findings as required by R.C. 2929.14(C)(4). The trial court's findings indicate that it engaged in the required analysis, and its sentence was proper. Oren's third assignment of error is therefore overruled.

{¶ 32} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.