[Cite as *State v. Barnett*, 2013-Ohio-4595.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 99419

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CHARLES D. BARNETT

DEFENDANT-APPELLANT

### JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-563550

**BEFORE:**    Boyle, P.J., S. Gallagher, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:**    October 17, 2013

**ATTORNEY FOR APPELLANT**

Richard Agopian
The Hilliard Building
1415 West 9th Street, 2nd Floor
Cleveland, Ohio    44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Brian R. Radigan
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio    44113

MARY J. BOYLE, P.J.:

{¶1} Defendant-appellant, Charles Barnett, appeals his 17-year sentence for attempted rape, aggravated burglary, and felonious assault. He raises two assignments of error for our review:

1. Imposition of consecutive sentences was contrary to law.

2. Mr. Barnett failed to receive effective assistance of counsel during the sentencing phase.

{¶2} We find no merit to his appeal and affirm the trial court.

Procedural History

{¶3} In June 2012, Barnett was indicted on six counts, including one count of rape, aggravated burglary, aggravated robbery, and felonious assault, and two counts of kidnapping. All counts carried several specifications, including sexually violent predator, notice of prior conviction, repeat violent offender, and sexual motivation.

{¶4} In November 2012, Barnett withdrew his former plea of not guilty and pleaded guilty to an amended indictment of attempted rape in violation of R.C. 2923.02 and 2907.02(A)(2); aggravated burglary in violation of R.C. 2911.11(A)(1); and felonious assault in violation of R.C. 2903.11(A)(1). The remaining counts and specifications were nolled by the trial court.

{¶5} The trial court sentenced Barnett to an aggregate of 17 years in prison: seven years for attempted rape, five years for aggravated burglary, and five years for felonious assault, all to run consecutive to one another. The trial court further notified

Barnett that he would be subject to a mandatory term of five years of postrelease control upon his release from prison, and he would be labeled a Tier III sex offender.

Consecutive Sentences

{¶6} In his first assignment of error, Barnett argues that the trial court's imposition of consecutive sentences was contrary to law. Barnett argues that the trial court failed to make the necessary findings under R.C. 2929.14(C).

{¶7} R.C. 2953.08(G)(2) states that when reviewing felony sentences, "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." Rather, the statute states that if we "clearly and convincingly" find that (1) "the record does not support the sentencing court's findings under [R.C. 2929.14(C)(4)]," or that (2) "the sentence is otherwise contrary to law," then we "may increase, reduce, or otherwise modify a sentence * * * or [we] may vacate the sentence and remand the matter to the sentencing court for re-sentencing." *State v. Goins*, 8th Dist. Cuyahoga No. 98256, 2013-Ohio-263, ¶ 6, quoting R.C. 2953.08(G)(2).

{¶8} R.C. 2929.14(C)(4) requires trial courts to engage in a three-step analysis in order to impose consecutive sentences. First, the trial court must find that "consecutive service is necessary to protect the public from future crime or to punish the offender." *Id*. Next, the trial court must find that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." *Id*. Finally, the trial court must find that at least one of the following applies: (1) the offender committed one or more of the multiple offenses

while awaiting trial or sentencing, while under a sanction, or while under postrelease control for a prior offense; (2) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or (3) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. *Id.*

{¶9} In each step of this analysis, the statutory language directs that the trial court must "find" the relevant sentencing factors before imposing consecutive sentences.  R.C. 2929.14(C)(4).  In making these findings, a trial court is not required to use "'talismanic words to comply with the guidelines and factors for sentencing.'"  *Goins* at ¶ 10, quoting *State v. Brewer*, 1st Dist. Hamilton No. C-000148, 2000 Ohio App. LEXIS 5455 (Nov. 24, 2000).  But it must be clear from the record that the trial court actually made the findings required by statute.  *Id.*, citing *State v. Pierson*, 1st Dist. Hamilton No. C- 970935, 1998 Ohio App. LEXIS 3812 (Aug. 21, 1998).  A trial court satisfies this statutory requirement when the record reflects that the court has engaged in the required analysis and has selected the appropriate statutory criteria.  *Id.*, citing *State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999).

{¶10} In imposing consecutive sentences, however, a trial court is no longer required to state their reasons for imposing consecutive sentences on the record.  *Id.* at ¶

11. Accordingly, a trial court is not required to articulate and justify its findings at the sentencing hearing. A trial court is free to do so, of course. But where, as here, there is no statutory requirement that the trial court articulate its reasons, it does not commit reversible error if it fails to do so, as long as it has made the required findings. *Id.*

{¶11} At Barnett's sentencing hearing, the state indicated for the record that the victim was a 61-year-old blind woman who lives by herself. The state showed photos to the court that were taken in the common areas inside the victim's apartment building, but not actually inside the victim's apartment. The photos showed that Barnett rode the elevator with the victim in her apartment building, followed her off of the elevator, hid behind a wall and waited for her to open her apartment door, and then pushed her into her apartment when she opened the door. The photos then showed Barnett "after he committed the acts" against the victim, and when he was "arrested on the scene." The state indicated that the photos were how police identified Barnett as the perpetrator.

{¶12} The state also told the trial court that the offenses that Barnett pleaded guilty to were not allied offenses of similar import. The state explained that there were three separate acts: (1) attempted penetration on the victim with an unknown object, (2) going into the victim's apartment, and (3) attempting to strangle the victim.

{¶13} The victim informed the court that as she was entering her apartment, Barnett jumped her from behind and put her in a "choke hold." Barnett forced her into her apartment and pushed her "straight back to the bedroom." He forced her onto her bed and kept asking her, "where is your money," and "where is your jewelry?" The

victim told him that she did not have any. Barnett rifled through all of her dresser drawers. He then pushed her down on the bed and pulled off her underwear and shorts. He took "some kind of device" out of a bag and he "kept pushing and progressed it to get it to penetrate me, and after a little while, he got frustrated because he couldn't do it." She said that the unknown "device" was "too big." Barnett then grabbed the victim's arm, pulled her up into a sitting position, and told her to stand up. He began choking her again, "much more severe than the first time." The victim said that she remained calm, but she passed out from the choking. When she woke up, she reported the incident to the office in her building.

{¶14} Defense counsel indicated that she read the presentence investigation report. She stated, "the only — the mitigating factors here are the fact that my client has had a history of mental health issues, schizophrenia, bipolar as well as depression." Defense counsel informed the court that on the day of this incident, Barnett was not taking his medication, which was a contributing factor. Defense counsel further stated that Barnett had a history of substance abuse; he smokes crack, uses marijuana, and consumes alcohol daily. Since Barnett has been incarcerated and not using drugs or alcohol, he has "accepted full responsibility for the matters" and articulated that he is remorseful for what he did. Defense counsel further explained that Barnett did not have family members who could offer him support. Defense counsel requested the court to run Barnett's sentences concurrently.

{¶15} Barnett's brother spoke on his behalf. He apologized to the victim for his brother's actions. He explained that Barnett had a history of drug problems, and he was "sure [his] brother was under the influence when this happened because he's not that type of person."

{¶16} Barnett apologized to the victim for what he did. He stated that he was not just saying that because he was in court; he said he was "truly sorry for the actions I committed under the influence of drugs and alcohol." Barnett stated that he needed treatment for drugs and alcohol; substance abuse had ruined his life. Barnett said that he was not trying to make excuses, but said that he was an addict.

{¶17} The trial court indicated that it read the presentence investigation report and Barnett's sanity evaluation. The trial court stated that it considered the overriding purposes and principles of sentencing. It also found, under R.C. 2929.12(B), that Barnett's conduct was "more serious" due to the fact that the victim's injuries were exacerbated by the victim's physical or mental condition or age. The court explained that the victim was 61 years old and had been blind since birth. The court further noted that the victim suffered serious physical and psychological harm; the victim continues to have problems with her vocal cords due to the choking. The court did not find that any of the "less serious" factors under R.C. 2929.12(C) existed; it stated that "his drug use may be an explanation, but it is not mitigating evidence." The court further found that the fact that Barnett was mentally ill and refused to take his medication did not mitigate his conduct.

{¶18} Under R.C. 2929.12(D), the court found that Barnett had a prior criminal history and "had not responded favorably to sanctions imposed on him." The court reviewed his extensive criminal history dating back to 1992 and continuing through 2012, including petty theft, aggravated assault in 1992 and 2007, aggravated burglary, theft, robbery, forgery, attempted abduction, and a series of misdemeanor convictions. The trial court did find, however, that Barnett showed genuine remorse for his actions, based on his plea and his statements at the sentencing hearing.

{¶19} Reviewing the facts, the court found that "this is one of the worst offenses it has seen perpetrated on an innocent victim." It further explained:

> This is a victim that the offender did not know. They had no relationship at the time prior to — or prior to the incident.
>
> The photographs are clear that the defendant must have ridden the elevator with the victim up to her apartment. He exited the elevator with the victim.
>
> The photographs in the building are clear that he stood and waited for her to open the door to the apartment and then they are clear that he did follow her into the apartment at that time.
>
> Then in addition to what is stated in the presentence report, which oftentimes reflects what is put into the police report, [the victim] did come in here and give a very detailed description of what happened.

{¶20} The court then stated that although the law presumes that concurrent sentences be imposed, it had the discretion to impose consecutive sentences "if necessary, to protect and/or punish and that is not disproportionate." The court made the following findings:

I find that the defendant is an individual who has been addicted to drugs and/or alcohol for the larger part, if not the entire part, of his adult life.

I find that although he does have a mental illness, he is in the status that he refuses to be med compliant.

All of those things led to the incident that occurred at this — in this case.

And that I find that he had in some fashion, premeditated what he was going to do to the victim; that he did wait for her to go into the apartment, and he followed her into the apartment.

I find that the harm in this case is so great, that a single sentence would not be appropriate. It would not adequately reflect the seriousness of the conduct based on my prior comments.

I do find that his history of criminal convictions, being released from prison and picking up cases as soon as he's released, both felonies and misdemeanors, show that consecutive terms are needed to protect the public.

{¶21} After reviewing the transcript in its entirety, we conclude that the trial court held a lengthy hearing, after which it made thoughtful and extensive findings. It discussed the seriousness of Barnett's crimes and the need to protect the public and punish Barnett. The trial court further considered the emotional and physical harm to the victim, as well as the fact that the victim was 61 years old and blind. The court also discussed Barnett's extensive criminal history and the fact that he had not responded well to sanctions in the past, evidenced by the fact that he continued to commit new crimes soon after he was released from prison. Thus, we find that the trial court fully engaged in the required analysis and fulfilled the statutory requirements of R.C. 2929.14(C)(4) to impose consecutive sentences.

{¶22} Barnett argues that the trial court "made a brief statement about consecutive sentences," and specifically only "used the term 'disproportionate,'" rather than make the "correct finding." While we agree with Barnett that the trial court failed to recite the exact statutory language, it is clear from the record in this case that when the trial court stated that consecutive sentences were not disproportionate, the court was referring to its obligation pursuant to R.C. 2929.14(C)(4).

{¶23} Again, as this court has repeatedly held, "the statutory language in R.C. 2929.14(C)(4) itself 'does not have magical powers.'" *State v. Wilson*, 8th Dist. Cuyahoga No. 99331, 2013-Ohio-3915, ¶ 9, citing *State v. Kuykendall*, 12th Dist. Clermont No. CA2004-12-111, 2005-Ohio-6872. Rather, "the requirements of R.C. 2929.14(C)(4) are designed to ensure that the trial court engaged in the required analysis." *Id.* The trial court thoroughly did that here.

{¶24} Accordingly, Barnett's first assignment of error is overruled.

Effective Assistance of Counsel

{¶25} In his second assignment of error, Barnett argues that he failed to receive effective assistance of counsel during his sentencing hearing. Barnett maintains that his counsel failed to "educate the court on the complexities of consecutive sentencing" and failed to "advocate" for him.

{¶26} For a defendant to succeed on an ineffective assistance of counsel claim, he or she must establish a two-prong test: (1) that counsel's performance was deficient; and

(2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**{¶27}** After review of the sentencing hearing, we find defense counsel's performance to be effective. The trial court had a clear grasp of the sentencing parameters, including the law on consecutive sentences. Thus, there was no need to educate the court. Further, defense counsel reviewed the presentence investigation report with the court, informing the court of the fact that Barnett was mentally ill and addicted to substance abuses. Indeed, Barnett does not point to any specific mitigating factor that his defense counsel failed to highlight to the court, nor do we find any in the record.

**{¶28}** Barnett implies that the fact that his defense counsel did not know that his brother was in the courtroom somehow establishes that she was ineffective. We disagree. If Barnett had known that his brother was in the courtroom, he should have informed his attorney. Regardless, even if Barnett's counsel should have known that his brother was there, there was no harm. Barnett's brother informed the trial court that he was there, and Barnett's brother was able to speak on Barnett's behalf at the sentencing hearing.

**{¶29}** Accordingly, Barnett's second assignment of error is overruled.

**{¶30}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., CONCURS;
SEAN C. GALLAGHER, J., CONCURS IN JUDGMENT ONLY
WITH SEPARATE OPINION

SEAN C. GALLAGHER, J., CONCURRING IN JUDGMENT ONLY:

**{¶31}** I concur with the majority's disposition of the second assigned error. I am compelled to concur in judgment only with the majority's decision as it relates to Barnett's first assignment of error. There is a growing disconnect between this court's two distinct approaches, derived from *State v. Goins,* 8th Dist. Cuyahoga No. 98256, 2013-Ohio-263, and *State v. Venes*, 8th Dist. Cuyahoga No. 98682, 2013-Ohio-1891, in reviewing whether the trial court made the requisite findings pursuant to R.C. 2929.14(C)(4) before imposing consecutive sentences. I write separately in the attempt to quell this growing disconnect, which I believe is unduly complicating consecutive sentence review and needs some clarification if trial courts and litigants are to apply the correct standards moving forward.

**{¶32}** The *Venes/Goins* differences culminated in one of this court's latest iterations of consecutive sentence review in *State v. Wilson*, 8th Dist. Cuyahoga No. 99331, 2013-Ohio-3915. Succinctly summarized, in *Venes*, this court required distinct findings separate from any other recitations to satisfy R.C. 2929.14(C)(4), while *Wilson* stated that reviewing courts may detect findings from a trial court's recitation of facts.

**{¶33}** In this case, the majority relies on *Goins* in reviewing the facts of the case to determine whether the trial court's findings are supported by the record. While the majority opinion on this issue is well written and well reasoned, I believe the majority's review is beyond the scope of Barnett's first assignment of error, in which he claims the trial court erred in imposing consecutive sentences by failing to make the R.C. 2929.14(C)(4) findings.

**{¶34}** Appellate courts are limited to reviewing the imposition of consecutive sentences to determine whether the sentence is "otherwise contrary to law" or whether the record clearly and convincingly supports the sentencing court's findings under R.C. 2929.14(C)(4). *Venes*, 8th Dist. Cuyahoga No. 98682, 2013-Ohio-1891, ¶ 11. The majority is correct in that

> [c]onsecutive sentences can be imposed if the court finds that (1) a consecutive sentence is necessary to protect the public from future crime or to punish the offender and (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[,]

and the court also finds at least one of the three additional factors in R.C. 2929.14(C)(4)(a)-(c) is present. *Id.* at ¶ 6. However, the court's reliance on *Goins* and its review is misplaced in the context of this appeal.

{¶35} In *Goins*, upon which the majority relies to the exclusion of *Venes*, the defendant was not appealing the lack of findings to satisfy R.C. 2929.14(C)(4) per se; rather, the defendant's appeal focused on a claim that the record did not clearly and convincingly support the trial court's findings or was contrary to law. *Goins* at ¶ 1 (Goins's assignment of error provided, "[t]he trial court erred by sentencing the defendant-appellant to a term of imprisonment contrary to statute and where its findings were not supported by the record").[1] In reviewing whether the trial court's findings are not supported by the record, this court must undertake a review of the factual record in order to determine whether the facts support the findings.[2] *See State v. Jarrett*, 8th Dist. Cuyahoga No. 98759, 2013-Ohio-1663 (affirming on the basis that the trial court's succinct findings were supported by the record). The *Goins* court did not articulate whether its factual review was pertinent to whether the record supported the findings or

---

[1] In retrospect, it appears that the arguments, that the trial court failed to make findings in support of the imposition of consecutive sentences, but in the alternative, the record did not support the findings the defendant claimed to not exist, are mutually exclusive.

[2] According to the plain language of R.C. 2953.08(G)(2), a reviewing court may overturn the imposition of consecutive sentences if the sentence is "otherwise contrary to law" or the reviewing court clearly and convincingly finds that "the record does not support the sentencing court's findings" under R.C. 2929.14(C)(4).

whether the trial court made the requisite findings in the first. This court simply combined both standards for the purposes of resolving Goins's arguments.

{¶36} This court's decision in *Venes* resolved any ambiguity from *Goins* and determined that a trial court's findings must be separate and distinct from any factual recitation by the trial court at sentencing when reviewing whether the sentence is contrary to law because of the failure to make the statutorily required findings. *Venes* at ¶ 14, 17.[3] In *Venes*, in part relying on *Goins,* this court held that the trial court satisfied its statutory requirement before imposing consecutive sentences through announcing the court's separate and distinct findings. *Venes*, 8th Dist. Cuyahoga No. 98682, 2013-Ohio-1891, ¶ 11; *Goins*, 8th Dist. Cuyahoga No. 98256, 2013-Ohio-263, ¶ 10. Unlike in *Goins,* this court in *Venes* limited its focus to the existence of findings, in light of the assigned error addressing whether the sentence was contrary to law, and not the reasons in support of those findings — as would be the standard of review to determine whether the facts support the record. *See Venes* at ¶ 12, 16; *Goins* at ¶ 18.

{¶37} The *Goins* approach is simply inapplicable to reviewing the single issue of whether the trial court made the requisite findings prior to the imposition of consecutive

---

[3] *Venes* implicitly distinguished the import of the *Goins* decision and noted the difference between reviewing the lack of findings from the lack of facts to support the findings. *See State v. Battle*, 8th Dist. Cuyahoga No. 98294, 2013-Ohio-816 (reversing because the trial court's statement that it considered all relevant statutory provisions was insufficient to satisfy R.C. 2929.14(C)(4)); *State v. Simonoski*, 8th Dist. Cuyahoga No. 98496, 2013-Ohio-1031 (affirming because the trial court's findings restated R.C. 2929.14(C)(4) verbatim; *but see State v. Grier*, 8th Dist. Cuyahoga No. 98637, 2013-Ohio-1661 (relying on *Goins* despite the fact that the appellant in *Grier* appealed the lack of findings while the appellant in *Goins* appealed the lack of support for the findings).

sentences. The factual review, as demonstrated by the *Goins* analysis, is specific to situations where the defendant argues that the consecutive sentence is contrary to law because the trial court failed to make the required findings and, in the alternative, the findings are not supported by the record. This court's *Goins* and *Venes* decisions, thus, exist harmoniously.

{¶38} More recently, however, this court in *Wilson*, 8th Dist. Cuyahoga No. 99331, 2013-Ohio-3915, held that a reviewing court may "detect" findings in the trial court's "discussion of relevant facts at the sentencing hearing * * *."[4] *Wilson* at ¶ 7. In *Wilson*, the only issue was whether the trial court's imposition of consecutive sentences was contrary to law, based on an alleged failure to make the required findings. *Id.* at ¶ 4. In *Wilson*, the appellant did not include a claim requiring the appellate court to determine whether the facts clearly and convincingly supported the trial court's findings. Reconcilable with this court's *Venes* decision, this court in *Wilson* affirmed the consecutive sentences in light of the fact that the trial court made the three express findings:

---

[4] In reaching that conclusion, the *Wilson* court heavily relied on *State v. Walker*, 8th Dist. Cuyahoga No. 97648, 2012-Ohio-4274. In *Walker*, reconcilable with *Venes*, this court held that the trial court failed to "make [one] express finding under R.C. 2929.14(C)(4)" and remanded the case in order for the trial court "to enter the proper *findings* on the record." *Id.* at ¶ 86. (Emphasis added.) In reaching its conclusion, however, the *Walker* court opined that a trial court's factual recitation may "equate to two findings," but the trial court there nonetheless failed to make the last finding. *Id.* at ¶ 87. This dicta created confusion. Nonetheless, nothing detracts from the holding that the trial court failed to make one finding, and the case was remanded in order for the trial court to enter the proper, and multiple, "findings." *Id.*

I am able to impose consecutive sentences, if necessary, [(1)]to protect the public or punish the offender and [(2)] not disproportionate—and I need to make the following findings: * * * I find that the harm was so great or unusual that a single term does not adequately reflect [the] seriousness of the conduct. * * * And [(3)] I do find that your criminal history shows the consecutive terms are needed to protect the public.

*Id.* at ¶ 11. Thus, any potential conflict between this court's *Wilson* and *Venes* decisions stems from the recitation of the legal standards.

{¶39} Inasmuch as I acknowledge two differing standards of review emerging, that of *Wilson* offering leeway to our review and *Venes* requiring a more bright-line approach, in the current case, the trial court satisfied its obligations to make findings under the more stringent *Venes* standard. Thus, this court need not delve into the minutia of any potential conflicts for the purposes of resolving Barnett's first assignment of error. At this point, the emerging diametric standards of review are purely academic.

{¶40} At the sentencing hearing in this case, the trial court made the required separate and distinct findings:

[(1)] I find that the harm in this case is so great, that a single sentence would not be appropriate. It would not adequately reflect the seriousness of the conduct based on my prior comments. [(2)] I do find that his history of criminal convictions, being released from prison and picking up

cases as soon as [Barnett is] released, both felonies and misdemeanors,

[(3)] show that consecutive terms are needed to protect the public.

Tr. 47:7-16.   In short, the trial court made the necessary separate and distinct findings, satisfying its obligation under R.C. 2929.14(C)(4) and this court's *Venes* decision, before imposing consecutive sentences upon Barnett.   The inquiry ends here.   The majority's review of the factual basis for the findings was therefore unnecessary in resolving Barnett's assignment of error.   Barnett felt that the trial court failed to articulate the consecutive sentencing findings, and therefore, any review of the factual basis for the findings was beyond the scope of the appeal.

{¶41} Accordingly, I would affirm the judgment of the trial court premised, however, on a different standard than employed by the majority.   I would have confined the review, based on this court's *Venes* decision, to whether the court made the required separate and distinct findings.   Because the majority perpetuates a standard of review allowing the appellate court to glean a recitation of facts as findings, contrary to this court's *Venes* decision, I must concur in judgment only.